# IN THE UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF OHIO WESTERN DIVISION

**SHARON MIDDLETON, individually and on behalf of all others similarly situated,**

    **Plaintiff,**

v.

**LIBERTY MUTUAL PERSONAL INSURANCE COMPANY, a foreign corporation,**

    **Defendant,**

**CASE NO.:**

**Judge**

**Magistrate**

**CLASS-ACTION COMPLAINT**

**(JURY TRIAL DEMANDED)**

Plaintiff, Sharon Middleton ("Plaintiff"), on behalf of herself and all others similarly situated, files this Class Action Complaint against Liberty Mutual Personal Insurance Company ("Liberty Mutual" or "Defendant") and in support thereof states the following:

## NATURE OF THE ACTION

1. This is an Ohio class-action lawsuit by an Ohio resident Plaintiff, who suffered a total loss on an insured vehicle. Plaintiff was insured under a Liberty Mutual private passenger auto ("PPA") policy of insurance. Plaintiff made covered claims for physical damage. Defendant breached Plaintiff's policy by failing to pay the sales tax, title transfer fees, and registration fees due under the policy.

2. Plaintiff files this lawsuit on behalf of all persons insured under a Liberty Mutual PPA insurance policy who suffered a total-loss covered claim and to whom Defendant did not pay sales tax, title-transfer fees, and registration fees due under their policies.

3. The Liberty Mutual policy ("Policy") provides the same PPA physical damage coverage under the policy to all putative class members.

4. In the Policy, Defendant's standardized policy language promises, upon the occurrence of a total loss to an insured vehicle, to provide payment of the actual cash value ("ACV") of the insured vehicle to the insured.

5. The Policy imposes no condition on insureds to replace the total-loss vehicle or to pay any sales tax, title-transfer fees, or registration fees before entitlement to full ACV payment.

6. Sales tax, title-transfer fees, and registration fees are a mandatory part of the replacement cost of every PPA vehicle insured by Defendant in Ohio, including for Plaintiff's total-loss vehicle.

7. State law imposes a mandatory state sales tax of 5.75% (plus local sales tax of 0 – 2%), minimum title transfer fees of $15.00, and minimum registration fees of $4.50 on each vehicle purchase or transfer of title and registration. As such, the Policy includes sales tax, title-transfer fees, and registration fees—all of which are mandatory replacement costs—in the ACV total-loss coverage provided by Liberty Mutual.

8. The sales tax due under the Policy on a total-loss insured vehicle is called the ACV sales tax. ACV sales tax is based on the sales tax due on the purchase of a replacement vehicle of the same value as the total-loss vehicle.

9. Defendant refused or failed to pay Plaintiff and the other Class members the amount necessary to constitute full ACV payment when they suffered total losses of their vehicles, notwithstanding its contractual obligation to pay such costs. Defendant thus breached its contracts with Plaintiff and the other Class members.

10. As a result of Defendant's conduct, Plaintiff and the other Class members were damaged in an amount to be determined at trial.

**JURISDICTION AND VENUE**

11. This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because (a) Plaintiff is a member of the putative class, which consists of at least 100 members; (b) Plaintiff is an Ohio citizen and Defendant is a Massachusetts citizen; and (c) the amount in controversy exceeds the sum of $5 million exclusive of interest and costs.

12. Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and Defendant is subject to personal jurisdiction here.

## PARTIES

13. Sharon Middleton is and was domiciled in Clermont County, Ohio, and was an Ohio citizen at all times relevant to this lawsuit.

14. Liberty Mutual is and was, at all times relevant to this lawsuit, a foreign corporation located in, incorporated in, and with its principal place of business in Massachusetts. Liberty Mutual is authorized to transact insurance in Ohio.

## FACTUAL ALLEGATIONS

**A.      Plaintiff's collision while Defendant insured her.**

15. Plaintiff entered the Policy agreement to be insured by Liberty Mutual under a standard policy form. Exhibit A is the form policy, and it sets out the Policy terms of coverage for total-loss claims for Plaintiff and all putative class members.

16. The Policy provided physical damage coverage for Plaintiff's 2011 Nissan Juke, VIN JN8AF5MV2BT017863 ("Insured Vehicle").

17. On or about May 7, 2020, Plaintiff was involved in an auto collision while operating the Insured Vehicle. Plaintiff filed a claim with Liberty Mutual for the Insured Vehicle physical damage caused by the collision, claim number PD000-042520539-01.

18. Liberty Mutual determined that the Insured Vehicle was a total loss and that the claim was a covered claim.

19. Liberty Mutual, through its vehicle valuation provider CCC Information Services, Inc., determined the Insured Vehicle had an adjusted vehicle value of $5,806.00, then added 6.75% tax in the amount of $391.91, and subtracted the $500.00 to determine a total value of $5,697.91. *See* **Exhibit B** Market Valuation Report.

20. Liberty Mutual, however, did not include any amount for sales tax nor any amount for title-transfer or registration fees. *See* **Exhibit C** Settlement Explanation at pg 2.

21. Liberty Mutual determined the actual cash value of the vehicle was $5,806.00, added $788.00 in "Plus Better Car Replacement", subtracted the $500.00 deductible and made a payment in the amount of $6,094.00 to the Plaintiff. *Id.*

22. The ACV sales tax on Plaintiff's claim was $391.91 because the applicable sales tax was 6.75% (5.75% state sales tax and 1% local sales tax) and the value of Plaintiff's Insured Vehicle at the time was $5,806.00. The title-transfer fee on Plaintiff's claim was $15.00 because Ohio mandates a minimum title-transfer fee of $15.00. The registration fee on Plaintiff's claim was $4.50 because Ohio mandates a minimum registration fee of $4.50.

23. Liberty Mutual's failure to pay ACV sales tax, title-transfer fees, and registration fees at the time of the loss breached the Policy because these fees are mandatory costs necessary for the replacement of her totaled Insured Vehicle.

**B.     The Liberty Mutual Policy**

24. Upon information and belief, each Class member was insured under Liberty Mutual policies that were materially identical to Plaintiff's Policy with respect to the obligation to pay "Actual Cash Value" in the event of a total loss. Upon information and belief, Liberty Mutual

drafts and implements substantively identical private passenger automobile insurance policies for all insureds.

25. Plaintiff's Liberty Mutual policy provides that for "Collision" coverage, Defendant will pay for "direct and accidental loss to 'your covered auto.'" *See* **Exhibit A** at 7.

26. The Liberty Mutual policy has a similar provision for its "Other than 'collision'" coverage. *Id.*

27. The Liberty Mutual policy defines "your covered auto" as any vehicle described in the declarations page. *Id.* at 1.

28. The Liberty Mutual policy represents that the limit of Liberty Mutual's liability for loss, with respect to coverage and applicable to total loss, is the lesser of "(1) Actual cash value of the stolen or damaged property; or (2) Amount necessary to repair or replace the property with other property of like kind and quality. *Id.* at 9.

29. The policy also states that "[a]n adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss." *Id.* at 10.

30. Actual Cash Value is not specifically defined by the policy.

31. Thus, the Liberty Mutual policy does not define Actual Cash Value as: (a) excluding the cost of taxes of fees from Actual Cash Value; (b) deferring payment of the cost of taxes or fees for any purpose whatsoever; (c) requiring an insured to obtain a replacement vehicle; (d) requiring the insured to first obtain a replacement vehicle as a condition precedent to receiving the costs of taxes or fees; or (e) linking the amount of taxes or fees to a particular replacement vehicle and the corresponding state or local regulatory fees on said replacement vehicle.

32. Under the Liberty Mutual policy, Defendant's legal obligation to pay Actual Cash Value on a first-party total loss claim does not differ between a "Collision" total loss claim and a "other than collision" total loss claim.

33. Upon information and belief, each Class member was insured under Liberty Mutual Policies that were materially identical to Plaintiff's Liberty Mutual Policy with respect to the obligation to pay "Actual Cash Value" in the event of a total loss.

C. **Defendant Does Not Pay the Agreed-Upon Replacement Costs**

34. Throughout the class period, Ohio and its local governments imposed sales taxes applicable to the purchase of any private passenger vehicle. These sales taxes are mandatory and apply to the replacement of all total-loss vehicles in Ohio. Ohio Rev. Stat. § 5739.02(A). None of the exceptions in Ohio Rev. Stat. § 5739.02(B) apply to the sale or lease of private-passenger motor vehicles.

35. Throughout the class period, Ohio prohibited buying or selling motor vehicles unless the certificate of title under the name of the buyer was provided. Ohio Rev. Stat. § 4503.03.

36. Ohio also prescribes the method and form for applying for transfer of certificate of title into the name of the buyer. Ohio Rev. Stat. § 4503.06.

37. Finally, Ohio imposes a flat (minimum) fee on certificate of title transfers. Ohio Rev. Stat. § 4503.09. These title-transfer fees are mandatory and apply to the replacement of all total-loss vehicles in Ohio. At the time of Plaintiff's loss, the title-transfer fee was $15.00. *Id.*

38. Throughout the class period, Ohio required that every vehicle be legally and properly registered to be used or operated on Ohio highways and roadways. Ohio Rev. Stat. § 4503.10.

39. Ohio provides the authority to set the fee amount for transfer of registration to the state registrar. Ohio Rev. Stat. § 4503.038.

40. These registration fees are mandatory and apply to the replacement of all total-loss vehicles in Ohio. The registration transfer fee at the time of loss on Plaintiff's replacement vehicle was $4.50.

41. By representing that it will pay Actual Cash Value in the event of a total loss, Defendant, through the Liberty Mutual Policy, promises to pay these mandatory vehicle replacement costs as part of its coverage.

42. Defendant, however, has breached its contracts with Plaintiff and the other Class members by refusing to pay sales tax, title transfer fees and tag transfer fees upon the total loss of an insured vehicle.

43. The aforementioned scheme-promising to provide the cost of replacement (minus depreciation) but declining to actually do so-is a common scheme implemented by Liberty Mutual in a uniform and identical manner towards all Ohio insureds throughout the relevant class time period.

44. Plaintiff paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of her accident.

## CLASS-ACTION ALLEGATIONS

45. Under Fed. R. Civ. P. 23, Plaintiff asserts claims for breach of contract on behalf of a class defined as follows:

> All Ohio residents insured for PPA physical damage by Defendant who:
>
> > (1) suffered a first-party total-loss of a covered vehicle during the eight years before this lawsuit through class certification;

>> (2) whose claims Defendant adjusted as total-loss claims;
>
>> (3) whose claims resulted in Defendant's payment of a covered claim; and
>
>> (4) to whom Defendant failed to pay the full ACV sales tax, title transfer fees, or registration fees on their covered claims.

Excluded from the class are Defendant and its affiliates, parents, and subsidiaries, officers and employees, governmental entities, the judge to whom this case is assigned, and the judge's court staff and immediate family.

46. **Numerosity**. Class members, believed to exceed 20,000, are so numerous and geographically dispersed around Ohio that separate joinder of each is impracticable.

47. The class members, which include Plaintiff, are ascertainable and readily identifiable from Defendant's information and records.

48. **Commonality**. The following common questions of law and fact exist, which are susceptible to common answers:

   a. whether Defendant's contractual agreement to pay Actual Cash Value in the event of total loss obligated it to pay sales tax to Plaintiff and the other Class members;

   b. whether Defendant's contractual agreement to pay Actual Cash Value in the event of a total loss obligated it to pay title and tag transfer fees to Plaintiff and the other Class members;

   c. whether Defendant breached its contracts with Plaintiff and the other Class members; and

   d. the amount and nature of relief to be awarded to Plaintiff and the other Class members.

49. **Typicality**. Plaintiff's claims and defenses are typical of the claims of class members' claims. Defendant injured Plaintiff and class members through uniform misconduct and Plaintiff's legal claims arise from the same core practices—namely, Defendant's failure to pay full ACV, including title-transfer fees and registration fees, for first-party total-loss claims under PPA

physical damage policies issued. Plaintiff's and class members' claims are based upon the same legal theories. Plaintiff suffered the same harm as all class members: unpaid sales tax, title-transfer fees, and registration fees due under their Policy.

50. **Adequacy**. Plaintiff is an adequate class representative because her interests do not conflict with class members' interests, and she will fairly and adequately protect these interests. Plaintiff's counsel are experienced in litigating consumer class actions and complex litigation and have specific experience successfully litigating similar disputes as class counsel.

51. **Predominance**: Questions of law and fact predominate over any questions solely affecting individual class members, including the common questions expressed above.

52. **Superiority**. A class action is superior to all other available methods of fairly and efficiently adjudicating this dispute. Class members' injuries, while meaningful, are too small to prosecute individually. And even if they were, thousands of individual lawsuits burden the court system. A class action presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## BREACH OF CONTRACT

53. Plaintiff incorporates the preceding allegations.

54. Plaintiff had an insurance contract with Liberty Mutual and performed all requirements under it.

55. Plaintiff made a claim under her Policy that Defendant determined to be a first-party total-loss covered claims.

56. Plaintiff's Policy required that that Defendant pay her full ACV sales tax, title transfer fees, and registration fees on her total-loss because these taxes and fees are mandatory replacement costs for total-loss insured vehicles.

57. Defendant failed to pay Plaintiff sales tax, title transfer fees, and title-transfer fees under her Policy.

58. Defendant's failure to provide coverage—that is, to pay Plaintiff, for sales tax, title-transfer fees, and registration fees—breached Defendant's contracts with Plaintiff.

59. As a result of Defendant's breaches, Plaintiff has suffered damages and is entitled, under her Policy, to sums representing their sales tax, title-transfer fees, registration fees, pre- and postjudgment interest, attorneys' fees, and all costs and expenses of litigation.

60. Plaintiff and class members are entitled to an award of attorney's fees and costs under Ohio law and all contractual and statutory provisions allowing for recovery of attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the class, demands a trial by jury on all triable issues and seek judgment as follows:

a) An order certifying this action as a class action on behalf of the class;

b) An award of compensatory damages in amounts owed under the Policies;

c) An award for all other damages according to the proof;

d) An award of attorneys' fees and expenses as appropriate;

e) An award for costs of suit incurred herein;

f) An award for pre- and postjudgment interests on any amounts awarded; and

g) An award for other and further forms of relief as this Court deems just and proper.

Dated: August 26, 2020

**SHAMIS & GENTILE, P.A.**
<u>/s/ Andrew Shamis</u>
Andrew Shamis, Esq.
Florida Bar No. 101754
14 NE First Avenue, Suite 705
Miami, Florida 33132
ashamis@shamisgentile.com
Telephone: 305-479-2299
Fax: 786-623-0915


Scott Edelsberg*
**EDELSBERG LAW, P.A.**
20900 NE 30th Ave, Suite 417
Aventura, Florida 33180
Telephone: 305-975-3320
scott@edelsberglaw.com


Rachel Dapeer*
**DAPEER LAW, P.A.**
300 S. Biscayne Blvd, #2704
Miami, FL 33131
Telephone: 305-610-5223
rachel@dapeer.com

*Counsel for Plaintiff
and the Proposed Class*

* Applications for admission *pro hac vice* to be filed