**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **SHARON MIDDLETON and CHARLES CLENDENIN, individually and on behalf of all others similarly situated** | CASE NO. 1:20-cv-00668-DRC |
| | JUDGE DOUGLAS R. COLE |
| **Plaintiffs** | |
| v. | |
| **LIBERTY MUTUAL PERSONAL INSURANCE COMPANY, a foreign corporation, and LM GENERAL INSURANCE COMPANY** | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| | (JURY TRIAL DEMANDED |
| **Defendants** | |

Plaintiffs, Sharon Middleton "("Middleton) and Charles Clendenin ("Clendenin" and collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, file this First Amended Class Action Complaint against Liberty Mutual Personal Insurance Company ("Liberty Mutual Personal") and LM General Insurance Company ("LM General" and collectively "Liberty Mutual" or "Defendants") and in support thereof state the following:

### NATURE OF THE ACTION

1. This is a class action lawsuit by Ohio resident Plaintiffs, who suffered total losses on insured vehicles. Plaintiffs were insured under a Liberty Mutual private passenger auto ("PPA") policies of insurance, including collision or physical damage other than collision, which requires Defendants to pay to repair or replace the damaged property, subject to the limitation on such

liability to pay for loss of "Actual Cash Value" or "ACV". Situations where Defendants decline to pay to repair the damaged vehicle to its pre-loss condition (including, if necessary, replacing component parts), and instead invokes the ACV limitation on liability in the case of a total loss of the insured vehicle, are known as a "total loss". Plaintiffs bring a claim for breach of contract, alleging that in such situations – where what Defendant calls a "total-loss" occurs – Defendant fails to abide by its contractual obligations.

2. Specifically, as a matter of policy, Defendants breached Plaintiffs' policies by failing to pay the full sales tax, title transfer fees, and registration fees due under the policies.

3. Plaintiffs file this lawsuit on behalf of all persons insured under a Liberty Mutual PPA insurance policy who suffered a total-loss covered claim and to whom Defendants did not pay the full sales tax, title-transfer fees, and registration fees due under their policies.

4. The Liberty Mutual Personal policy insuring Middleton ("Policy") provides the same PPA physical damage coverage under the same policy terms as the policy insuring Clendenin and all putative Class Members.

5. In the Policy, Defendants' standardized policy language promises, upon the occurrence of a total loss to an insured vehicle, to provide payment of the actual cash value ("ACV") of the insured vehicle to the insured.

6. The Policy imposes no condition or requirement on insureds to replace the total-loss vehicle or to pay any sales tax, title-transfer fees, or registration fees before entitlement to full ACV payment.

7. Sales tax, title-transfer fees, and registration fees are a mandatory part of the replacement cost of every PPA vehicle insured by Defendants in Ohio, including for Plaintiffs' total-loss vehicles.

8. State law imposes a mandatory state sales tax of 5.75% (plus local sales tax of 0 – 2%), minimum title transfer fees of $15.00, and minimum registration fees of $4.50 on each vehicle purchase or transfer of title and registration. As such, the Policy includes sales tax, title-transfer fees, and registration fees—all of which are mandatory replacement costs—in the ACV total-loss coverage provided by Liberty Mutual.

9. The sales tax due under the Policy on a total-loss insured vehicle is called the ACV sales tax. ACV sales tax is based on the sales tax due on the purchase of a replacement vehicle of the same value as the total-loss vehicle.

10. This lawsuit is brought by Plaintiffs, individually and on behalf of all other similarly situated insureds, who suffered damages due to Defendants' practice of refusing to make proper ACV payments to first-party total-loss claimants under insurance policies containing comprehensive and collision coverages. Specifically, as a matter of policy, Defendants fail to include state and local title transfer and vehicle registration fees ("Transfer Fees") and state and local sales tax ("Sales Tax") in its calculation of ACV when making total loss payments to its insureds.

11. Defendants' failure to pay the ACV of total-loss vehicles, including Sales Tax and Transfer Fees, constitutes a material breach of contract as to Plaintiffs and every member of the putative Class.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because (a) Plaintiffs are members of the putative Class, which consists of at least 100 members; (b) Plaintiffs are Ohio citizens and Defendants are Massachusetts citizens and LM General is an

Illinois citizen; and (c) the amount in controversy exceeds the sum of $5 million exclusive of interest and costs.

13. Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and Defendants are subject to personal jurisdiction here.

## PARTIES

14. Sharon Middleton is and was domiciled in Clermont County, Ohio, and was an Ohio citizen at all times relevant to this lawsuit.

15. Charles Clendenin is and was domiciled in Hamilton County, Ohio, and was an Ohio citizen at all times relevant to this lawsuit.

16. Liberty Mutual Personal is and was, at all times relevant to this lawsuit, a foreign corporation located in, incorporated in, and with its principal place of business in Massachusetts. Liberty Mutual Personal is authorized to transact insurance in Ohio.

17. LM General is and was, at all times relevant to this lawsuit, a foreign corporation incorporated in Illinois, and with its principal place of business in Massachusetts. LM General is authorized to transact insurance in Ohio.

## FACTUAL ALLEGATIONS

A. **Defendants' Total Loss Claims**

**Plaintiff Middleton**

18. Plaintiff Middleton entered the Policy agreement to be insured by Liberty Mutual Personal under a standard policy form. **Exhibit A** is the form policy, and it sets out the Policy terms of coverage for total-loss claims for Plaintiff Middleton and all putative Class Members.

19. The Policy provided physical damage coverage for Plaintiff Middleton's 2011 Nissan Juke, VIN JN8AF5MV2BT017863 ("Nissan").

20. On or about May 7, 2020, Plaintiff Middleton was involved in an auto collision while operating the Nissan. Plaintiff Middleton filed a claim with Liberty Mutual Personal for the Nissan's physical damage caused by the collision, claim number PD000-042520539-01.

21. Liberty Mutual Personal determined that the Nissan was a total loss and that the claim was a covered claim.

22. Liberty Mutual Personal, through its vehicle valuation provider CCC Information Services, Inc. ("CCC") determined the Nissan had an adjusted vehicle value of $5,806.00, then added 6.75% tax in the amount of $391.91, and subtracted the $500.00 deductible to determine a total value of $5,697.91. *See* **Exhibit B** Middleton's Market Valuation Report.

23. Interestingly, CCC noted that $391.91 of Sales Tax should be included in the total valuation listed in its Market Valuation Report. *Id*. at 1 of 17. CCC further noted that the total listed in its report "may not represent the total of the settlement as other factors (e.g. license and fees) may not be taken into account." *Id.*

24. Liberty Mutual Personal, however, did not include any amount for sales tax nor any amount for title-transfer or registration fees, even though Liberty Mutual Personal purported that when determining the ACV, "[o]ther factors, such as applicable taxes and fees, state and policy provisions, and your deductible, were taken into account." *See* **Exhibit C** Middleton's Settlement Explanation at 2.

25. Liberty Mutual Personal determined the actual cash value of the vehicle was $5,806.00, added $788.00 in "Plus Better Car Replacement", subtracted the $500.00 deductible and made a payment in the amount of $6,094.00 to Plaintiff Middleton. *Id.*

5

26. The ACV sales tax on Plaintiff Middleton's claim was $391.91 because the applicable sales tax was 6.75% (5.75% state sales tax and 1% local sales tax) and the value of Plaintiff Middleton's Nissan at the time was $5,806.00. The title-transfer fee on Plaintiff Middleton's claim was $15.00 because Ohio mandates a minimum title-transfer fee of $15.00. The registration fee on Plaintiff Middleton's claim was $4.50 because Ohio mandates a minimum registration fee of $4.50.

27. Liberty Mutual Personal's failure to pay ACV sales tax, title-transfer fees, and registration fees at the time of the loss breached the Policy because these fees are mandatory costs necessary for the replacement of her totaled Nissan.

**Plaintiff Clendenin**

28. Plaintiff Clendenin entered an agreement to be insured by LM General under policy terms with materially identical language as Exhibit A.

29. The Policy provided physical damage coverage for Plaintiff Clendenin's 2013 Mazda 5 Grand Touring, VIN JM1CW2DL8D0156787 ("Mazda").

30. On or about February 6, 2020, Plaintiff Clendenin was involved in an auto collision while operating the Mazda. Plaintiff Clendenin filed a claim with LM General for the Mazda's physical damage caused by the collision, claim number PD000-041954055-01.

31. LM General determined that the Mazda was a total loss and that the claim was a covered claim.

32. LM General, through its vehicle valuation provider CCC Information Services, Inc. ("CCC") determined the Mazda had an adjusted vehicle value of $6,601.00, then added 7% tax in the amount of $462.07, and subtracted the $500.00 deductible to determine a total value of $6,563.07. *See* **Exhibit D** Clendenin's Market Valuation Report.

6

33. Interestingly, CCC noted that $462.07 of Sales Tax should be included in the total valuation listed in its Market Valuation Report. *Id.* at 1 of 17. CCC further noted that the total listed in its report "may not represent the total of the settlement as other factors (e.g. license and fees) may not be taken into account." *Id.*

34. LM General, however, did not include any amount for sales tax nor any amount for title-transfer or registration fees, even though LM General purported that it calculated the actual cash value of the vehicle and "[o]ther factors, such as applicable taxes and fees, state and policy provisions, and your deductible, were taken into account." *See* **Exhibit E** Clendenin's Settlement Explanation at 2.

35. LM General determined the actual cash value of the vehicle was $6,601.00 and subtracted the $500.00 deductible and made a payment in the amount of $6,101.00 to Plaintiff Clendenin. *Id.*

36. The ACV sales tax on Plaintiff Clendenin's claim was $462.07 because the applicable sales tax was 7% (5.75% state sales tax and 1.25% local sales tax) and the value of Plaintiff Clendenin's Mazda at the time was $6,601.00. The title-transfer fee on Plaintiff Clendenin's claim was $15.00 because Ohio mandates a minimum title-transfer fee of $15.00. The registration fee on Plaintiff Clendenin's claim was $4.50 because Ohio mandates a minimum registration fee of $4.50.

37. LM General's failure to pay ACV sales tax, title-transfer fees, and registration fees at the time of the loss breached the Policy because these fees are mandatory costs necessary for the replacement of his totaled Mazda.

**B.    The Liberty Mutual Policy**

38. All entities under the Liberty Mutual brand, including Liberty Mutual Personal and LM General, utilize the same material policy terms; indeed Defendants (along with all other Liberty Mutual entities) utilize the same policy forms.

39. Thus, Middleton's Policy provides the same physical-damage coverage for comprehensive and collision coverage as the policies issued by LM General to Clendenin and all Class Members during the Class period. Middleton's, Clendenin's, and Class Members' Policies contained identical material language during the Class period with regard to Defendants' payment on PPA first-party total-loss physical damage claims.

40. Plaintiffs entered into the Policy agreement to be insured by Liberty Mutual.

41. Liberty Mutual's policy provides that for "Collision" coverage, Defendant will pay for "direct and accidental loss to 'your covered auto.'" *See* **Exhibit A** at 7.

42. The Liberty Mutual policy has a similar provision for its "Other than 'collision'" coverage. *Id.*

43. The Liberty Mutual policy defines "your covered auto" as any vehicle described in the declarations page. *Id.* at 1.

44. When an insured vehicle sustains damage (or "loss"), Defendants are obligated by its "Payment for Loss" provision to repair the vehicle to its pre-loss condition, including any required replacement of component parts. *Id.* at 10.

45. If the vehicle cannot be repaired to its pre-loss condition – and thus Defendants cannot pay for loss through repair of the vehicle – or if Defendants choose not to pay to repair the vehicle for economic reasons, Defendants are obligated to pay to replace the vehicle.

46. The cost to replace a vehicle in Ohio includes Sales Tax and Transfer Fees, as set forth above, which are not merely reasonably necessary to replace a vehicle in Ohio but are mandatory and unavoidable.

47. Sales Tax and Transfer Fees are not an exclusion in the Policy, nor does the Policy limit liability such that Sales Tax and/or Transfer Fees are excluded.

48. As set forth below, after Plaintiffs' vehicles sustained damage, Defendants did not pay to repair the damage to the vehicles. Instead, Defendants determined that the damage to the vehicles was such that it could not be repaired and/or that it would be uneconomical to repair the vehicle given its pre-loss value. Because Defendants refused to pay to repair the vehicles, the remaining promise in the Payment for Loss provision is the amount necessary to *replace* the vehicles.

49. Because Defendants promised to pay to replace the damaged vehicle, which includes Sales Tax and Transfer Fees, but did not pay Sales Tax and Transfer Fees, Defendants breached the Payment for Loss promise.

50. Defendants' liability to pay to repair or replace the damage is not limitless. Instead, the Policies limit Defendants' liability for loss to ACV.

51. The Liberty Mutual policy represents that the limit of Liberty Mutual's liability for loss, with respect to coverage and applicable to total loss, is the lesser of "(1) The actual cash value of the stolen or damaged property; (2) The amount necessary to repair or replace the property…or (3) The limit of liability shown in the Declarations." *Id.* at 6 of Automobile Amendatory Endorsement to the Policy.

52. The policy also states that "[a]n adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss." *Id.*

9

53. Furthermore, the policy promises "[i]f we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property." *See* **Exhibit A** at 10.

54. Actual Cash Value is not specifically defined by the policy.

55. Thus, the Liberty Mutual policy does not define Actual Cash Value as: (a) excluding the cost of taxes of fees from Actual Cash Value; (b) deferring payment of the cost of taxes or fees for any purpose whatsoever; (c) requiring an insured to obtain a replacement vehicle; (d) requiring the insured to first obtain a replacement vehicle as a condition precedent to receiving the costs of taxes or fees; or (e) linking the amount of taxes or fees to a particular replacement vehicle and the corresponding state or local regulatory fees on said replacement vehicle.

56. Defendants' standardized policy language with respect to ACV coverage for total loss vehicles exists in every automobile policy issued by Defendants in Ohio during the relevant time period.

57. The Policy language applies to all covered vehicles irrespective of ownership interest—whether owned, financed, or leased.

58. Under Defendants' Policy, the ACV of an insured vehicle includes costs necessary to replace the vehicle, adjusted for depreciation and physical condition of the vehicle.

59. In exchange for the premiums paid by the insureds, Defendants promise through its Policy to pay a predictable amount—the actual cash value of the insured vehicle.

**C. Defendants Do Not Pay the Agreed-Upon ACV**

60. Throughout the Class period, Ohio and its local governments imposed sales taxes applicable to the purchase of any private passenger vehicle. These sales taxes are mandatory and apply to the replacement of all total-loss vehicles in Ohio. Ohio Rev. Stat. § 5739.02(A). None of

the exceptions in Ohio Rev. Stat. § 5739.02(B) apply to the sale or lease of private-passenger motor vehicles.

62. Throughout the Class period, Ohio prohibited buying or selling motor vehicles unless the certificate of title under the name of the buyer was provided. Ohio Rev. Stat. § 4503.03.

62. Ohio also prescribes the method and form for applying for transfer of certificate of title into the name of the buyer. Ohio Rev. Stat. § 4503.06.

63. Finally, Ohio imposes a flat (minimum) fee on certificate of title transfers. Ohio Rev. Stat. § 4503.09. These title-transfer fees are mandatory and apply to the replacement of all total-loss vehicles in Ohio. At the time of Plaintiffs' losses, the title-transfer fee was $15.00. *Id.*

64. Throughout the Class period, Ohio required that every vehicle be legally and properly registered to be used or operated on Ohio highways and roadways. Ohio Rev. Stat. § 4503.10.

65. Ohio provides the authority to set the fee amount for transfer of registration to the state registrar. Ohio Rev. Stat. § 4503.038.

66. These registration fees are mandatory and apply to the replacement of all total-loss vehicles in Ohio. The registration transfer fee at the time of loss on Plaintiffs' replacement vehicles was $4.50.

67. Ohio law is clear that unless otherwise defined by a Policy, ACV is reasonably interpreted to mean or include "replacement costs" accounting for depreciation and property condition.

68. By representing that it will pay Actual Cash Value in the event of a total loss, Defendants, through the Liberty Mutual Policy, promise to pay these mandatory vehicle replacement costs as part of its coverage.

11

69. Defendants, however, have breached their contracts with Plaintiffs and the other Class Members by refusing to pay sales tax, title transfer fees, and tag transfer fees upon the total loss of an insured vehicle.

70. The aforementioned scheme—promising to provide the cost of replacement (minus depreciation) but declining to actually do so—is a common scheme implemented by Liberty Mutual in a uniform and identical manner towards all Ohio insureds throughout the relevant Class time period.

71. Plaintiffs paid all premiums owed and otherwise satisfied all conditions precedent such that their insurance policies were in effect and operational at the time of their accidents.

## **CLASS ACTION ALLEGATIONS**

72. Plaintiffs bring this action seeking representation of a Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

73. Plaintiffs assert claims for breach of contract on behalf of a Class (hereafter the "Class") defined as follows:

> All insureds, under any Ohio policy issued by Liberty Mutual Personal Insurance Company or LM General Insurance Company with the same operative policy language covering a vehicle with private-passenger automobile physical damage coverage for comprehensive or collision loss where such vehicle was declared a total loss, who made a first-party claim for total loss, and whose claim was adjusted as a total loss, and to whom Defendants failed to pay full ACV sales tax, title transfer fees and/or registration fees on their covered claims within the applicable statute of limitations prior to the date on which this lawsuit was filed until the date of any certification order.

74. Excluded from the Class are Defendants and their affiliates, parents, and subsidiaries, officers and employees, governmental entities, the judge to whom this case is assigned, and the judge's court staff and immediate family.

12

75. **Numerosity:** Although the precise number of Class Members is unknown to Plaintiffs at this time and can only be determined through appropriate discovery, Plaintiffs believe that because Defendants are some of the largest motor vehicle insurers in the State of Ohio and wrote hundreds of millions of dollars of private-passenger physical damage coverage premiums during the relevant time period, the Classes of persons affected by Defendants' unlawful practice consists of thousands of individuals or the Class of persons affected are otherwise so numerous that joinder of all Class Members is impractical, and likely numbers in the tens of thousands. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendants pursuant to standardized insurance policy language, and results in the retention by Defendants of insurance benefits and monies properly owed to Plaintiffs and the Class Members. Thus, numerosity within the meaning of Fed. R. Civ. P. 23(a)(1) is established.

76. **Commonality:** The following common questions of law and fact exist, which are susceptible to common answers:

   a. whether Defendants' contractual agreement to pay Actual Cash Value in the event of total loss obligated it to pay sales tax to Plaintiffs and the other Class Members;

   b. whether Defendants' contractual agreement to pay Actual Cash Value in the event of a total loss obligated it to pay title and tag transfer fees to Plaintiffs and the other Class Members;

   c. whether Defendants' use of the term Actual Cash Value, which is not defined in the Policy, includes consideration of costs necessary to replace the vehicle and achieve the insured's pre-loss position;

   d. whether Defendants have breached their insurance contracts with Plaintiffs and the Class Members by failing to include ACV sales tax, title and tag transfer fees as part of the ACV payment.

77. **Typicality:** Plaintiffs' claims and defenses are typical of the Class members' claims. Defendants injured Plaintiffs and Class Members through uniform misconduct and

13

Plaintiffs' legal claims arise from the same core practices—namely, Defendants' failure to pay full ACV, including title-transfer fees and registration fees, for first-party total-loss claims under PPA physical damage policies issued. Plaintiffs' and Class Members' claims are based upon the same legal theories. Plaintiffs suffered the same harm as all Class Members: unpaid sales tax, title-transfer fees, and registration fees due under their Policies.

78. **Adequacy:** Plaintiffs are adequate Class Representatives because their interests do not conflict with Class Members' interests, and they will fairly and adequately protect these interests. Plaintiffs' counsel are experienced in litigating consumer class actions and complex litigation and have specific experience successfully litigating similar disputes as Class counsel.

79. **Predominance:** The issues common to the Class Members predominate over individual issues (if any) within the meaning of Fed. R. Civ. P. 23(b)(3). The common issues articulated herein are not only the central issues to this litigation, they are virtually the only issues relevant to this litigation. Any individual issues are a product only of the fact that the value of vehicles varies – because ACV sales tax is a percentage of underlying value, the *amount* of sales tax varies. However, any variance is resolved by a ministerial and mechanical application of uniform rates imposed by the State of Ohio and is independent from any question concerning the merits of the claim. Quite frankly, there are no relevant individual questions important to this litigation.

80. **Superiority:** Moreover, Class treatment is superior to any other treatment within the meaning of Fed. R. Civ. P. 23(b)(3). Class treatment provides for a fair and efficient adjudication of the controversy because it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate consistent adjudication. Furthermore, because the damages suffered by individual Class Members

is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiffs know of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

81. The issues related to Plaintiffs' claims do not vary from the issues relating to the claims of the other members of the Classes such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

82. The relevant Policy provisions for each Class Member are the same. The relevant law relating to the interpretation and application of those Policy provisions for each Class Member is the same. There is the potential for inconsistent or varying adjudications concerning individual Class Members. Allowing the issues to be adjudicated in a piecemeal fashion likely would result in certain Class Members who are not parties to individual adjudications having their rights impaired or impeded without notice or adequate representation.

83. Defendants' breach of Policy provisions requiring them to pay ACV on total-loss claims is a continuing breach and violation of Policy terms.

## CLAIM FOR BREACH OF CONTRACT

84. The allegations in Paragraphs 1-83 are hereby incorporated by reference.

85. Plaintiffs had insurance contracts with Liberty Mutual and performed all requirements under those contracts.

86. This count is brought by Plaintiffs on behalf of themselves and on behalf of the Class Members.

87. Plaintiffs are and were parties to insurance contracts executed by Liberty Mutual as described herein. *See* **Exhibit A**. All Class Members are and were parties to insurance contracts with Defendants containing materially identical terms.

88. The interpretation of Plaintiffs' and all Class Members' insurance Policies are governed by Ohio law.

89. Plaintiffs and all Class Members made a claim determined by Defendants to be a first-party total-loss covered claim under the insurance policy and determined by Defendants to be a covered claim.

90. Defendants, by paying the total-loss claim, determined that Plaintiffs and each Class Member complied with the terms of their insurance contracts, and fulfilled all duties and conditions required for each to be paid on his or her total loss.

91. The uniform Policy provisions covering Plaintiffs' and all Class Members' claims required that full ACV sales tax, title-transfer fees, and registrations fees be paid on total losses, and as such, the Plaintiffs and every Class Member was owed the ACV of the vehicle.

92. Defendants failed to include sufficient ACV sales tax, title-transfer fees, and registrations fees and thus failed to pay the ACV owed under the Insurance Policy to Plaintiffs and every Class Member.

93. Each Class Member suffered damages due to Defendants' failure to pay full ACV sales tax, title-transfer fees, and registrations fees as required by the Policy.

94. Defendants' failures to provide the promised coverage constitute a material breach of contract with Plaintiffs and every Class Member.

95. As a result of said breaches, Plaintiffs and the Class Members are entitled under the insurance policies to sums representing the benefits owed for a complete ACV payment, including

sales tax, title-transfer fees, registration fees, prejudgment and post-judgment interest, injunctive relief, attorneys' fees, costs and expenses of litigation, and other relief as is appropriate.

96. Plaintiffs and the Class Members are entitled to an award of attorneys' fees and costs pursuant to Ohio law and all contractual and statutory provisions allowing for recovery of attorneys' fees.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs, individually and on behalf of the putative Class, demand relief and judgment as follows:

1. For an Order certifying this action as a Class action on behalf of the Class described above;

2. For an award of compensatory damages for the Class in amounts owed by Defendants;

3. For all other damages according to proof;

4. For an award of attorneys' fees and expenses as appropriate pursuant to applicable law;

5. For costs of suit incurred herein;

6. For pre- and post-judgment interests on any amounts awarded; and

7. For other and further forms of relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury as to all issues so triable.

Dated: October 12, 2020

Respectfully submitted,

/s/ Stuart E. Scott
STUART E. SCOTT (0064834)
KEVIN C. HULICK (0093921)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, Ohio 44114
Telephone: (216) 696-3232
Facsimile: (216) 696-3924
sscott@spanglaw.com
khulick@spanglaw.com

Scott Edelsberg*
**EDELSBERG LAW, P.A.**
20900 NE 30th Ave, Suite 417
Aventura, Florida 33180
Telephone: (305) 975-3320
scott@edelsberglaw.com

Andrew J. Shamis*
**SHAMIS & GENTILE, P.A.**
14 NE First Avenue, Suite 705
Miami, Florida 33132
Telephone: (305) 479-2299
ashamis@shamisgentile.com

Rachel Dapeer*
**DAPEER LAW, P.A.**
300 S. Biscayne Blvd, #2704
Miami, Florida 33131
Telephone: (305) 610-5223
rachel@dapeer.com

*Counsel for Plaintiffs and the Proposed Class*

* Applications for admission *pro hac vice* to be filed

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day of October 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF System.

/s/ Stuart E. Scott
STUART E. SCOTT (0064834)
KEVIN C. HULICK (0093921)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, Ohio 44114
Telephone: (216) 696-3232
Facsimile: (216) 696-3924
sscott@spanglaw.com
khulick@spanglaw.com

*Counsel for Plaintiffs and the Proposed Class*