**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| SHARON MIDDLETON, CHARLES CLENDENIN, THERESA GRELA, MICHAEL JACKSON, LAUREN HUFFMAN, NICHOLE HOLLAND and WENDALL GARTH individually and on behalf of all others similarly situated, | CASE NO.: 1:20-cv-00668-DRC |
| Plaintiffs, | |
| v. | |
| LIBERTY MUTUAL PERSONAL INSURANCE COMPANY, LM GENERAL INSURANCE COMPANY, LIBERTY MUTUAL FIRE INSURANCE COMPANY and SAFECO INSURANCE COMPANY OF ILLINOIS | |
| Defendants, | |

_____

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**
**OF PROPOSED CONSOLIDATED CLASS ACTION SETTLEMENT**

Plaintiffs Sharon Middleton, Charles Clendenin, Wendell Garth, Theresa Grela, Michael Jackson, Lauren Huffman, and Nichole Holland (Plaintiffs) submit this unopposed Motion and respectfully request that the Court preliminarily approve the proposed class action settlement described in detail in the Class Action Settlement Agreement and exhibits thereto ("Agreement"), attached hereto as Exhibit A and incorporated by reference, between Plaintiffs and Defendants Liberty Mutual Personal Insurance Company, LM General Insurance Company, Safeco Insurance Company of Illinois, and Liberty Mutual Fire Insurance Company (together, "Defendants" or "Liberty Mutual").

## I.     CONCISE STATEMENT OF THE RELIEF REQUESTED

Plaintiffs file this motion requesting that the Court preliminarily approve a consolidated class action settlement, and preliminarily certify a settlement class, comprised of two sub-classes, that would resolve the claims of three separately-filed federal court class actions against four insurance companies, all of which are related entities under the Liberty Mutual umbrella of insurance companies.

The three cases are:

(i) this action, *Middleton, et. al. v. Liberty Mutual Personal, et. al.*, which was brought by Plaintiffs Middleton and Clendenin on behalf of a class of Ohio insureds against Defendants Liberty Personal and LM General in the Southern District of Ohio and was assigned the Judge Cole ("the *Middleton* case").

(ii) *Garth v. Safeco Ins. Co. of Illinois*, No. 1:21-cv-602 (N.D. Oh.), which was brought by Plaintiff Garth on behalf of a class of Ohio insureds against Defendant Safeco Insurance in the Northern District of Ohio and was assigned to Judge Calabrese ("the *Garth* case"); and

(iii) *Grela, et. al. v. LM General, et. al.*, No. 1:22-cv-00806 (N.D. Ill.), which was filed in Cook County, Illinois, and eventually removed to the Northern District of Illinois, and was brought by Plaintiffs Grela, Jackson, Huffman, and Holland on behalf of a class of Illinois insureds against Defendants LM General, Liberty Fire and Liberty Personal ("the *Grela* case").

Because the relevant claims, law, facts, and business practices were materially identical across all three cases, the parties mediated the three cases together and are seeking to consolidate the three cases for purposes of settlement in this case, which was the first-filed of the three cases.[1] Plaintiffs request that the Court grant preliminary approval of the proposed settlement and enter an order of preliminary approval that includes the content of the proposed order attached as Exhibit 1 to the Agreement. The proposed preliminary approval order authorizes the form of notice to be given to the class, establishes a schedule and process for the submission of any objections or requests for exclusion from the class, and provides for a fairness hearing to be held by the Court. The parties will submit a motion requesting final approval of the settlement in advance of the fairness hearing.

## II.     STATEMENT OF THE BASIS FOR THE REQUEST

The parties reached the Settlement Agreement after, collectively, approximately sixty-one months of litigation. The three cases represent the last, remaining challenges to Liberty Mutual's sales tax practices related to the settlement of total loss auto claims. Liberty Mutual heavily disputed both its obligation to pay sales tax in Ohio and Illinois (given insurance regulations in both states that provide sales tax only must be paid upon proof of the purchase of a replacement vehicle) and the amenability of the cases to class-wide treatment. The parties sought an amicable resolution of the lawsuits in order to avoid potentially disparate rulings from courts in the two states and to have ensure certainty moving forward as to its sales tax practices in Ohio and Illinois. The Agreement is the product of substantial, contentious negotiations between the parties through mediation facilitated by respected mediator Mike Ungar. *See* McLaughlin on Class Actions § 6:7

---

[1] Plaintiffs are concurrently filing a proposed consolidated Complaint that includes all claims and parties from the three cases.

(12th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.").

The parties have reached a settlement agreement for the purpose of making available to Settlement Class Members a Settlement Fund of $14,404.000.00. Settlement Class Members who submit a claim will receive payment of sales tax in the amount of the applicable state and local surtax at the time of loss, calculated as a percentage of the underlying vehicle value ("ACV Sales Tax"). If Defendants originally included a partial sales tax amount in the total-loss payment, the Settlement Class Member will receive ACV Sales Tax less that partial amount originally included in the total-loss payment. This constitutes 100% of the damages sought by Plaintiffs in the respective Complaints and Plaintiffs for total-loss comprehensive and/or collision auto claims.[2]

III.     **MEMORANDUM OF LEGAL AUTHORITY**

a.  **Litigation and Discovery History**

This case involves allegations that Defendants breached automobile insurance policies issued to Plaintiff and members of the proposed class by failing to include in payments for total loss vehicles an amount for sales tax calculated as the applicable percentage of the totaled vehicle's adjusted value. Exhibit B ("Phillips Decl.") ¶ 4. In both Illinois and Ohio, Defendants' practice and procedure concerning sales tax usually depended on whether the insured submitted proof of

---

[2] If the claims submitted are for an amount exceeding the Settlement Fund, there will be a pro rata reduction of claim payments. Agreement at ¶ 41. But Plaintiffs evaluated the spreadsheet data and sample claims to identify how often Defendants reimbursed (fully or partially) sales tax to its insureds. Based on that review, the Fund amounts are that which Plaintiffs are confident would satisfy all claims—as such, Plaintiffs do not anticipate any claim payments under the Settlement will be for less than 100% of the Class Members' alleged damages.

replacement within thirty days of the claim.[3] If not, Defendants did not pay any sales tax as part of its total-loss claim payment. If the insured submitted proof of replacement, Defendants would reimburse the incurred sales tax up to the amount that would have been owed on the total-loss vehicle. *Id*. at ¶ 5.

The aforementioned facts were elicited through discovery conducted during this litigation. *Id*. at ¶ 7. Plaintiffs allege that conditioning payment of sales tax on proof of replacement and the failure to pay the full ACV Sales Tax—calculated as the applicable percentage of the underlying total-loss vehicle value—may be consistent with Ohio and Illinois insurance regulations bur constitutes a breach of Defendants' form insurance Policy which state that Liberty Mutual settlement payment "will include the applicable sales tax for the damaged or stolen property." Defendants maintain that their practices and procedures were valid and lawful pursuant to their Policy and Ohio and Illinois law. During the discovery period and prior to or concurrent with settlement, Plaintiffs served multiple rounds of discovery requests, secured and analyzed thousands of documents, including spreadsheets containing millions of data inputs, engaged in extensive briefing of the merits, including dispositive motions, and retained several expert witnesses, including an insurance industry expert and a data analysis expert. *Id.* at ¶¶ 6-9. Over the three cases, Plaintiffs briefed three motions for class certification and secured an Order denying a Motion to Dismiss.

Defendants have agreed, moving forward in Ohio and Illinois, to include in payments for total loss vehicles an amount for sales tax calculated as the applicable state and local percentage

---

[3] This is because both Illinois and Ohio have regulations setting forth minimum standards which permit insurers the option of conditioning payment of sales tax on proof of replacement. Plaintiffs' theory is that such minimum standards do not govern given that Defendants' Policy promises to pay sales tax without precondition of replacement.

of the adjusted vehicle value without requiring insureds to show proof of replacement. Agreement at ¶ 87.

### b. The Proposed Settlement

The proposed settlement requires Defendants to pay to Settlement Class Members who submit a valid claim a cash payment in the amount of ACV Sales Tax, less any amount in sales tax that was included in the original total-loss payment. Agreement at ¶¶ 41, 73, 75-76. Defendants have also agreed (and, in fact, have already changed their business practices) to include ACV Sales Tax without precondition in its total-loss claim, calculated as the applicable state plus local percentage on the adjusted vehicle value of the total-loss vehicle. *Id*. at ¶ 87.

### 1. $17.67 Million Monetary Value

The monetary benefits total approximately $17,684,880.00, which is the sum of: (i) $14,404,000.00 Settlement Payment Fund, (ii) attorneys' fees (paid separate from Settlement Fund) of up to $3,168.880.00, and (iii) Settlement Administration costs (paid separate from Settlement Fund) of an estimated $112,000.000. See generally *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016) (the total settlement value is the cash benefits, attorneys' fees and costs, and administration costs). Determining the amount that was paid for sales tax on many of the claims may require a detailed review of the claim file to assess the basis for each payment that was made and what was (or was not) included in that payment. Phillips Decl. at ¶ 21. The proposed settlement provides for Defendants to review the files of class members who make claims in the settlement to make these determinations.

### 2. Likelihood of Success is Uncertain

If the case were to proceed through final judgment in the three cases, and then an appeal to the Sixth Circuit (as for the *Garth* case and the *Middleton* case) and the Seventh Circuit (as for the

*Grela* case), both sides would bear significant risk. The putative class would bear the risk of recovering nothing if class certification were denied or reversed on appeal, or if judgment was entered in favor of Defendants or a judgment in favor of the class was overturned on appeal. *Id*. at ¶ 54. Notably, both the Sixth Circuit and the Seventh Circuit have recently ruled in favor of an insurance company on similar claims, and the Seventh Circuit in particular agreed with Defendants that an insurance regulation is incorporated into insurance policies and establishes the relevant standard for whether sales tax is owed on a total-loss claim (albeit under difference insurance policy language). *Id*. at ¶ 13.

### 3. The Settlement Provides for a Limited Release, Robust Notice, and a Simple Claims Process

For the convenience of settlement class members in submitting claims, Liberty Mutual will extract information to pre-fill the Class Members' name and address, date of loss, claim number, and estimated payout from the settlement into a spreadsheet. *See* Agreement at Exhibit 2. Notice will be provided via direct mail on ***three*** separate occasions, including a pre-filled, postage-prepaid claim form, and via email on an additional ***five*** occasions (to Class Members for whom Defendants possess an email address). Agreement at ¶¶ 53, 55. The claim submission process is extremely simple, requiring merely that Class Members confirm they were not paid sales tax in connection with the settlement of their claim[4] and that the prefilled information, including their current address, is correct, sign the form, and drop the postage-prepaid form in the mail—and the Settlement also provides for a website where insureds can make the same confirmation and submit the claim form electronically. *Id*. at ¶¶ 53-58. Finally, the Parties have agreed to both Internet Notice—targeted by geography—and a Publication Notice in a state-wide newspaper. *Id*. at ¶¶ 59-

---

[4] Liberty Mutual does not maintain class-wide data on sales tax paid to total loss insureds outside of individual claim files.

60. Additionally, the release is narrowly tailored to the precise claim alleged in this litigation relating to payment of sales tax without precondition. *Id*. at ¶ 33.

This type of settlement structure, under which class members submit pre-filled, postage prepaid claim forms if they wish to make a claim for payment in the settlement process, is regularly approved by federal courts. *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016) (affirming a claims-made class action settlement as fair and reasonable); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000 (MDL 2001), 2016 U.S. Dist. LEXIS 130467 (N.D. Ohio Sep. 23, 2016) (approving a settlement that allowed for class members to file one of three different types of claims); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 783 (N.D. Oh. 2010) (approving settlement that required claim submissions to establish entitlement to settlement proceeds)*See, also Bastian v. United Servs. Auto. Ass'n*, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla. Nov. 1, 2017) (approving similar claims-made settlement in class action concerning total-loss vehicles where USAA's internal procedure for payment of sales tax in Florida was materially identical to Defendants' procedure here); *Cook v. Gov't Emples. Ins. Co.*, No.: 6:17-cv-891-ORL-40KRS, 2020 U.S. Dist. LEXIS 111956 (M.D. Fla. Jun. 22, 2020) (same); *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 628 (11th Cir. 2015) (same). Indeed, a Nebraska Court recently approved a virtually identical (albeit much smaller given the number of insureds at issue) settlement entered into by Safeco Insurance Company of Illinois this past Spring. *Wagner v. Safeco Insurance Co. of Illinois*, No. CI20-10735 (Douglas County Dist. Ct., April 15, 2022) (attached as Exhibit C); *see also Glover v. LM General Insurance Co.*, No. 2020-022973-ca-01 (Miami-Dade County, May 20, 2022) (attached as Exhibit D).

**4. Attorneys' Fees Are Reasonable**

The proposed settlement further provides that class counsel may make an application for attorneys' fees and costs, which Defendants have agreed to pay the amount approved by the Court, not to exceed $3,168,880.00. Agreement at ¶ 90. This constitutes approximately 18.03% of the settlement value, which is below the Sixth Circuit's benchmark for attorneys' fees. *Kis v. Covelli Enters.*, No. 4:18-cv-54, 2020 U.S. Dist. LEXIS 93929, at *17, n.75 (N.D. Oh. May 29, 2020) (approving fee award of 30% and citing cases that note the typical range of class action attorneys' fees is 20-30% of settlement value); *see also Gascho*, 822 F.3d at 282 (when conducting a percentage of the fund analysis, "attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class, which includes the benefit to class members, the attorney's fees and may include costs of administration") (cleaned up); *Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at *8 (S.D. Ohio Apr. 30, 2018) (to calculate settlement benefits, "courts include all amounts benefitting the class, including those amounts typically borne by the class, such as attorneys' fees and notice and administration costs"). This amount equates to Class Counsel's estimated lodestar (through final approval), utilizing rates recently approved in recent class action litigation, with a 2.2 multiplier. Phillips Decl. at ¶ 26. This is also comfortably within the range courts consistently find reasonable in class litigation. *See generally Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 517 (6th Cir. 1993) (approving 2.0 multiplier); *Bower v. MetLife, Inc.*, 2012 U.S. Dist. LEXIS 149117, at *23-24 (S.D. Oh. Oct. 17, 2012) (collecting cases demonstrating that multipliers ranging from 1.75 to 5.0 are considered reasonable in class litigation). As such, and as Plaintiffs will demonstrate in the forthcoming fee petition, attorneys' fees amount are reasonable whether this Court uses the "percentage-of-the-fund" approach or the lodestar approach.

### c. Class Certification Is Warranted

Plaintiffs submit that certification of the proposed Settlement Classes is appropriate. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Respectfully, this Court should conclude that it is likely to certify the Settlement Class and approve the Settlement as fair, adequate, and reasonable. *See* Rule 23(e)(1). Certification will allow Notice of the Settlement terms to issue to Settlement Class members; of their right to be heard on its fairness; of their right to opt-out or object; and of the Final Approval Hearing. *See* Manual for Compl. Lit., §§ 21.632, 21.633. Defendants do not oppose certification for settlement purposes.[5] Each Fed. R. Civ. P. 23(a) and (b)(3) requirements are satisfied here for the Settlement Classes, defined to include insureds who submitted a first-party total-loss claim under collision or comprehensive coverage during the relevant time periods. *See* Agreement at ¶ 45 (class definitions).

The numerosity requirement is satisfied for purposes of settlement because Defendants' records and spreadsheet data and a review of sample claims demonstrates there are more than 15,000 members in total in the Ohio and the Illinois classes. Phillips Decl. at ¶ 29. This easily satisfies the numerosity requirement. *See generally Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (explaining that "while there is no strict numerical test, substantial numbers usually satisfy the numerosity requirement").

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The claims must depend on a common contention of which

---

[5] Although Defendants do not oppose certification of the Settlement class, and have agreed to settle the Settlement Class claims as set forth herein, Defendants do not agree with Plaintiffs' interpretation of Rule 23, and this Agreement does not constitute a waiver of any defenses Defendants have to a litigation class if the proposed Agreement is not approved.

"its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Sprague v. GMC*, 133 F.3d 388, 397 (6th Cir. 1998) (to satisfy commonality there "need only be one issue common to the class"). Here, the commonality requirement is satisfied because there is a common question of law concerning whether Defendants' standard and uniform Policy promise includes sales tax when making payment in money requires Defendants to pay sales tax without precondition or whether, instead, the total-loss regulations govern and permit Defendants to condition payment of sales tax on proof of replacement or whether there is any "applicable" sales tax to pay if the insured did not replace her totaled vehicle. This issue applies to all claims of the proposed Settlement Classes and every Settlement Class member, and its resolution would resolve an issue central, indeed dispositive, to every class member claim. Phillips Decl. at ¶ 30; *see also Davis v. Geico Cas. Co.*, No. 2:19-cv-2477, 2021 U.S. Dist. LEXIS 237288, at *11-12 (S.D. Oh. Dec. 13, 2021) (certifying litigated class alleging virtually identical claim and holding that whether ACV includes sales tax without precondition is a common question that "will generate common answers that are likely to drive resolution of the lawsuit.").

Rule 23(a)(3) requires that the class representative's claim(s) be typical of the claims of the Settlement Class. Fed. R. Civ. P. 23(a)(3). Typicality is established where the plaintiff's claim "arises from the same event or practice or course of conduct [as class members]" and are "based on the same legal theory." *Am. Med. Sys.*, 75 F.3d at 1079; *see also Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561-562 (6th Cir. 2007) (typicality met where representative's claim was premised on the same injury as class members). Here, typicality is satisfied because Plaintiffs' claims are based on precisely the same legal theory and "pattern or practice" as Settlement Class Members: that Defendants owed ACV Sales Tax without precondition and, thus, Defendants' "pattern or

practice" of conditioning payment of sales tax on proof of replacement constituted a breach of contract. Phillips Decl. at ¶ 31. Further, Plaintiffs' claims are typical of the Class Members because Plaintiffs and every Class member were insured under form Policies containing materially identical language. *Id*. at ¶ 31; see also *Davis*, 2021 U.S. Dist. LEXIS 237288, at *13-16 (finding typicality was established for claims virtually identical to those alleged here).

Rule 23(a)(4) requires that "the representative parties ... fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This involves two criteria: "1) the representative must have common interests with unnamed [class] members…and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012). The court should "review[] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Id*. Class Counsel's declaration demonstrates that Plaintiffs adequately performed their duties as class representatives. Phillips Decl. at ¶ 33. There is no evidence Plaintiffs possess interests in conflict with the proposed Classes. *Id*. The declaration also demonstrates that Class counsel competently represented the proposed class to date and are qualified to represent the settlement class. *Id*. at ¶ 34.

Rule 23 requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance is established where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole…predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564. An absence of individual issues is not necessary. *See Young*, 693 F.3d at 544. Courts routinely find predominance is established where

the claim turns on interpretation of uniform contract terms. *E.g.*, *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.*, 935 F.3d 496, 506 (6th Cir. 2019) ("Breach of contract claims arising out of a standardized, form contract ordinarily are suitable for class certification…"). Here, the common question—whether Defendants' form Policy requires payment of ACV Sales Tax without precondition—predominates over any individual question. Essentially the only "individual" question, such as it is, concerns the amount of damages to which Class Members are entitled, which does not preclude a finding of predominance. *Brown v. Electrolux Home Products, Inc.*, 817 F. 3d 1225, 1239 (11th Cir. 2016) (noting the "black-letter rule" that individual questions of damages do not predominate over common questions of liability); *see also Davis*, 2021 U.S. Dist. LEXIS 237288, at *20-21 (predominance easily met for claims that ACV includes sales tax without precondition).

As to the superiority factor, "cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Young*, 693 F.3d at 545. To determine if class-wide adjudication is proper, courts consider: (A) the interest in individually controlling prosecution; (B) whether other litigation has commenced; (C) the desirability of concentrating litigation; and (D) manageability. *Beattie*, 511 F.3d at 564. Here, common issues are central to the litigation and the individual damages, on average, approximately $600.00 per class member, which easily satisfies the first prong of the superiority analysis. *See generally Chapman v. Tristar Prods.*, No. 1:16-CV-1114, 2017 U.S. Dist. LEXIS 61767, at *16 (N.D. Oh. Apr. 24, 2017) ("The most compelling rationale for finding superiority in a class action is the existence of a negative value suit, which is where the costs of enforcement in an individual action would exceed the expected individual recovery") (cleaned up). The remaining prongs also favor class treatment: no action was "already commenced" by any member of the class, it is desirable and efficient to concentrate class members'

identical claims in this forum, and Plaintiffs are unaware of any difficulties in the management of this settlement. Phillips Decl. at ¶ 32.

For these reasons, certification of the Settlement Class is appropriate.

### d.  Preliminary Approval Is Warranted

There is a strong federal policy "favoring settlement of class actions." *UAW v. General Motors Corp.*, 497 F.3d 615, 633 (6th Cir. 2007). Preliminary approval—which simply permits Notice of the settlement to be provided to the Class—is a relatively limited inquiry where the court's role is to "evaluate whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Hyland v. HomeServices of Am., Inc.*, No. 3:05-CV-612, 2012 U.S. Dist. LEXIS 4818, at *2 (W.D. Ky. Jan. 17, 2012) (cleaned up). These requirements are readily satisfied here, as demonstrated above and in the exhibits hereto.

As will be set forth in greater detail in the Motion for Final Approval, the Fed. R. Civ. P. 23(e) factors all favor approval. *See generally Cook*, 2020 U.S. Dist. LEXIS 111956, at *16-17 (explaining that Rule 23 was amended to add factors relevant to approval of class settlements, which was intended to highlight the "core concerns" of Rule 23, but not to displace factors prescribed by appellate courts). The factors outlined in *UAW*, 497 F.3d at 631—which remain relevant to the analysis—also favor approval.

### 1.  The Rule 23 Threshold Factors Favor Approval

Fed. R. Civ. P. 23(e)(2) contains two threshold procedural requirements: adequate representation and arms-length negotiations. Both favor preliminary approval here.

The adequate representation analysis under Rule 23(e) "is distinct from Rule 23(a)(4) and is meant to address whether the class representatives possessed sufficient information and knowledge of the claims, issues, and defenses prior to negotiating and settling the claims." *Cook*, 2020 U.S. Dist. LEXIS 111956, at \*18. This overlaps with one of the *UAW* factors, i.e., "the amount of discovery engaged in by the parties[.]" 497 F.3d at 631. Here, Plaintiffs engaged in (respectively) twenty-four months, twenty-two months, and fifteen months of litigation and had engaged in significant discovery prior to reaching settlement. Phillips Decl. at ¶ 8. Over the three cases, Plaintiffs served multiple rounds of discovery requests and third-party public records requests, secured and analyzed thousands of documents, including spreadsheets containing millions of data inputs, engaged in extensive briefing of the merits, including dispositive motions, and retained several expert witnesses. *Id*. at ¶ 9. As for the *Garth* case and the *Middleton* case, Plaintiffs had conducted all discovery necessary to file a complete motion for class certification, which was indeed filed in *Middleton*. *Id*. at ¶ 6. Also, the undersigned have litigated numerous similar class actions, including against Defendants, and have detailed knowledge about the strengths and weaknesses of the claims, as well as Defendants' data systems, practices, and procedures. *Id*. at ¶ 10. The Rule 23 adequate representation factor and the *UAW* "amount of discovery" factor both clearly favor preliminary approval. *See generally Satterly v. Airstream, Inc.*, 2020 U.S. Dist. LEXIS 210868, at \*16-17 (S.D. Oh. Sep. 25, 2020) (that plaintiffs had "exchanged written discovery and relevant information, engaged in further independent investigation, confirmed damages calculations with a third-party expert, and conducted additional legal research regarding the claims and defenses in the lawsuits" militated in favor of approving a class settlement).

As for the second procedural factor, settlement was reached with the assistance of Michael Ungar, an experienced and well-respected mediator. Phillips Decl. at ¶ 15[6]. The negotiations were unquestionably conducted at arms' length. *See generally Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion").  In fact, after extensive pre-mediation negotiations and two full days of in-person mediation sessions with Mr. Ungar, the Parties were not able to settle the cases.  Only after a re-doubled effort in light of upcoming deadlines in the three cases did the Parties go back to the negotiations table and reach a final settlement.  Moreover, the Parties extensively litigated numerous issues, and Defendants sought to avoid Plaintiffs' claims through numerous means, including dispositive motions on the merits, attempting to moot the claims of class representatives[7], and so forth. *See generally In re Prandin Direct Purchaser Antitrust Litig.*, 2015 U.S. Dist. LEXIS 5964 (E.D. Mich. Jan. 20, 2015) ("years of hard-fought litigation" was evidence of a lack of collusion). Thus, the Rule 23 "arms' length" and the *UAW* "lack of fraud or collusion" factor both weigh in favor of preliminary approval. *See Gascho*, 822 F.3d at 277 ("The parties' two-and-a-half years of litigation, extensive discovery…and formal mediation session all weighed against the possibility of fraud or collusion.").

### 2.  The Rule 23 Substantive Factors Favor Approval

Fed. R. Civ. P. 23(e)(2)(C)-(D) prescribe the factors relevant to determining whether a proposed Settlement is substantively adequate: the costs and risk of trial and appeal, the method

---

[6] The parties are prepared to provide a declaration from Mediator Michael Ungar in support of the Unopposed Motion for Preliminary Approval.

[7] In *Grela*, Liberty Mutual tendered the sales tax allegedly owed to the original plaintiff.  The Plaintiff responded by amending her complaint to add additional name plaintiffs and two additional Liberty Mutual companies as defendants.

of claim distribution, the terms of attorneys' fees, and whether class members are treated equitably vis a vi each other.

Plaintiffs believe the Agreement is beneficial to the Class for several reasons, as can be seen between a comparison of the likelihood of ultimate success and the relief secured through the settlement.[8] *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 130467, at *47-50 (N.D. Oh. Sep. 23, 2016) (analyzing the fairness of a settlement by comparing the benefits provided by the settlement to the damages potentially available at trial in light of the odds of success); *see generally In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) ("The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured."). Although Plaintiffs intend to provide a more detailed analysis of how the settlement is beneficial to the class when moving for final approval, Plaintiffs briefly note that the likelihood of success is uncertain. Both the Sixth and Seventh Circuits recently ruled against insureds alleging a materially identical theory. *Wilkerson v. Am. Family Ins. Co.*, 997 F.3d 666 (6th Cir. 2021); *Sigler v. Geico Cas. Co.*, 967 F.3d 658 (7th Cir. 2020). The Seventh Circuit in particular adopted the argument Defendants make in this litigation, i.e., that minimum regulatory requirements imposed by a state govern the relevant rights and obligations of an insurance policy issued in that state.[9] Plaintiffs disagree with these

---

[8] Comparing (a) the benefits secured through settlement with (b) the benefits potentially available at trial divided by the chances of success is consistent both with Fed. R. Civ. P. 23(e)(2)(C)(i) and with two *UAW* factors, i.e., "the complexity, expense and likely duration of the litigation and the likelihood of success on the merits." 497 F.3d at 631 (cleaned up).

[9] The issue was not raised in *Wilkerson*, and so the court noted it as a potentially relevant issue, but did not address it. *Id.* at 673.

decisions and/or believe they are distinguishable, but, at the very least, they signify the substantial amount of risk inherent to continuing litigation. Phillips Decl. at ¶ 13.

Given this risk—and even absent it—the value of the settlement is significant and impressive. First, the Settlement provides damages in the amount of essentially 100% of the amount that could have been secured at a litigated judgment if Plaintiffs prevailed entirely on the claim.[10] Phillips Decl. at ¶18. This level of success in obtaining benefits through a Settlement is extremely rare. *See Lee v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 121998, at *7 (S.D. Fla. Sep. 14, 2015) (settlements that "provide near-complete relief to class members on a claims-made basis" are an "extraordinary result"); *cf. In re Polyurethane Foam Antitrust Litig.*, 2015 U.S. Dist. LEXIS 23482, at *5 (N.D. Ohio Feb. 26, 2015) (approving settlement that provided for 18% of the damages that could have been achieved at trial); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, 2005 U.S. Dist. LEXIS 9705, at *9 (E.D. Pa. May 19, 2005) (11.4% of damages). Additionally, the Notice to which the Parties agree is robust and comprehensive. Phillips Decl. at ¶¶ 53-55. Defendant agreed to send individual Notice by direct mail (including provisions to ensure any class member who changed addresses is located) on three separate occasions and (where possible) by email on five occasions, along with Internet Notice and Publication Notice, thus providing significant assurance that Class Members will receive Notice. *See Hogan v. Cleveland Ave Rest. Inc.*, No. 2:15-CV-2883, 2019 U.S. Dist. LEXIS 212214, at *10 (S.D. Oh. Dec. 10, 2019) (noting the "robust notice" in determining whether to preliminarily approve a class settlement). This level of notice is far more robust even than notice plans courts have found impressive. *Cf. id.* (finding a notice plan that provided for a single postcard, a single

---

[10] Plaintiffs arguably have a minimal claim for prejudgment interest, which is not provided for in the Settlement Agreement and which is the only thing necessitating the "essentially" qualifier.

email, and a Facebook page to be "robust"); *Cotter v. Lyft, Inc.*, No. 13-cv-04065-VC, 2017 U.S. Dist. LEXIS 38256 (N.D. Cal. Mar. 16, 2017) (characterizing notice plan providing for three emails as "extensive and robust").

Second, the "method of processing class-member claims" is simple and straightforward: The Claim form is pre-filled, postage pre-paid, and Class Members must simply attest to the information and send the Claim form back (or, if necessary, update their address). Agreement at ¶¶ 53-58, Exhibit 2; *see Wilson v. EverBank*, 2016 U.S. Dist. LEXIS 15751, at *32-33 (S.D. Fla. Feb. 3, 2016) (finding significant that class members need not submit any evidence or documentation beyond merely "checking a box" which "should take no more than a few minutes for the average claimant to complete."); *Manjunath A. Gokare, P.C. v. Fed. Express Corp.*, No. 2:11-CV-2131-JTF-CGC, 2013 U.S. Dist. LEXIS 203546, at *9 (W.D. Tenn. Nov. 22, 2013) ("[T]he claim form is extremely simple, includes a postage-paid, pre-addressed envelope and does not require Settlement Class Members to…provide any back-up documentation."). Moreover, Class Members will be provided a Claimant ID that can be used to access a pre-filled electronic claim, requiring merely an electronic attestation and clicking a "Submit Claim" button. *Id*. at ¶ 56.[11]

Third, the terms of the attorneys' fees award weigh in favor of approval of the proposed Settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). The analysis here is "distinct from the Rule 23(h)"

---

[11] In a recent case, the settlement required class members to identify "contact information, [] the Sonic location where they made their purchase, and the last four digits of the payment card number they used to make the purchase and whether the fraud occurred before February 28, 2018 (if applicable)." *In re Sonic Corp.*, 2019 U.S. Dist. LEXIS 135573, at *15 (N.D. Oh. Aug. 12, 2019). Even this process was considered simple enough to militate in favor of settlement. Here, the proposed Settlement contemplates a far simpler process, where class members merely confirm they have not already been paid sales tax and to pre-filled information on a postage-prepaid (or electronic) claim.

analysis, which addresses whether the attorneys' fees amount is reasonable on its own terms, and "instead addresses if and how the attorneys' fees impacted the terms of the Settlement." *Cook*, 2020 U.S. Dist. LEXIS 111956, at \*24. Here, the attorneys' fees amount did not impact the substantive Settlement terms at all—indeed, the parties did not even discuss attorneys' fees until after all other Settlement terms were finalized. Phillips Decl. at ¶ 16. Further, Defendants have agreed to separately pay attorneys' fees and costs (in the amount approved by the Court), meaning that the attorneys' fee award will not decrease or impact in any way the payments to Settlement Class Members. *See Hicks v. State Farm Fire & Cas. Co.*, 2021 U.S. Dist. LEXIS 227148, at \*13 (E.D. Ky. Nov. 8, 2021) (finding that Rule 23(e)(2)(C)(iii) favored settlement "particularly given the fact the fee will not reduce the amount the class members receive"). As such, Rule 23(e)(2)(C)(iii) favors approval of the proposed Settlement.

Finally, class members are clearly treated equitably, in that they will receive the same Notice, the same claim process, are agreeing to precisely the same release, and are entitled to the same benefits: sales tax calculated as a percentage of their vehicle's underlying value.[12]

As such, all the Rule 23(e)(2)(C)-(D) factors militate in favor of approval.

### 3. The Remaining *UAW* Factors Favor Approval

The *UAW* factors that are independent of the Rule 23 factors—i.e., the opinions of class counsel and the public interest, *see* 497 F.3d at 631—also support approval of the proposed Agreement.[13] Class Counsel possess extensive institutional knowledge of Defendants' procedures

---

[12] While the Settlement provides for the Named Plaintiffs to petition for a Service Award, courts generally analyze Service Awards standing alone, and not within the rubric of Fed. R. Civ. P. 23(e)(2)(D). *See, e.g.*, *In re Sonic Corp.*, 2019 U.S. Dist. LEXIS 135573, at \*16-18 (analyzing Service Awards separately from Rule 23(e)(2)(D)). Whether the proposed Service Awards are reasonable will be addressed in the forthcoming fee petition.

[13] The final factor is the response from the Class, but that factor is irrelevant until the Hearing on Final Approval, after Notice is provided and Class Members are given the opportunity to object.

and data systems, as well as the relative strengths and weaknesses of the underlying claim, and it is their reasoned judgment that the proposed Settlement is in the best interests of the Class. *See Brent v. Midland Funding, LLC*, 2011 U.S. Dist. LEXIS 98763, at *49-50 (N.D. Oh. Sep. 1, 2011) ("The Court gives great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of the settlement."); *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, district courts should be hesitant to substitute its own judgment for that of counsel") (cleaned up). Moreover, "settlement fosters the goals of certainty, finality and economy, which lie at the heart of our general preference for settlement of class actions." *Berry v. School Dist.*, 184 F.R.D. 93, 106 (W.D. Mich. 1998). And because of the valuable compensatory relief secured and the beneficial change in business practice, the Settlement "does its best to ensure that Defendants can continue to provide valuable service to Class Members in an atmosphere that will foster trust and confidence." *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 372 (S.D. Oh. 1990).

For these reasons, all Rule 23(e) and *UAW* factors militate in favor of preliminary approval of the proposed Settlement.

### 4.    The Claims-Made Structure Does Not Undermine Approval

The settlement includes a claims-made structure, which does not impact the "fairness, reasonableness, or adequacy of proposed settlement." *Hamilton v. SunTrust Mortg. Inc.*, 2014 U.S. Dist. LEXIS 154762, at *18 (S.D. Fla. Oct. 24, 2014). As the Sixth  Circuit has observed, the U.S. Supreme Court has approved claims-made distribution of class proceeds like the one proposed for these cases where "[t]o claim their logically ascertainable shares of the  …  fund, absentee class members need prove only their membership in the injured class." *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016), *citing Boeing Co. v. Van Gemert*, 444 U.S. 472,

480, 100 S.Ct. 745 (1980). Although claims-made process may result in a portion of the settlement fund not being distributed to the class, the focus should be on "the deterrent effect" of the settlement and "the potential awards available rather than the actual claims made" against the settlement fund. *Gascho* at 284-85. As the Third Circuit has noted,

> There are a variety of reasons that settlement funds may remain even after an exhaustive claims process—including if the class members' individual damages are simply too small to motivate them to submit claims. Class counsel should not be penalized for these or other legitimate reasons unrelated to the quality of representation they provided. Nor do we want to discourage counsel from filing class actions in cases where few claims are likely to be made but the deterrent effect of the class action is equally valuable.

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178 (3d Cir.2013).

With the *UAW* factors met, the claims-made process is reasonable given the facts of the case, as was the process in *Gascho.* There, like here, the court upheld the district court's finding that the claims-made process was reasonable, "given the age of class address information, the lack of certainty that the [mailed notice] actually reached the named class members, and because [a] 8.2 % response rate was 'well within the acceptable range of responses in a consumer class action.'" *Gascho* at 276. Furthermore, the court looked favorably upon the robust notice process and the ease at which class members could submit a claim, as set forth above. *Id.* Put differently, if all the traditional notions of settlement fairness are met, as they are in this proposed settlement, a claims-made process should be approved in a situation where it is difficult to ascertain the identity of class members, the settling parties engage in a good faith effort to provide notice to potential claimants, and class members can file claims with ease.

The Agreement not only require Liberty Mutual to change its sales tax practice but removes the risk that the class will recover nothing due to an unfavorable ruling on class certification, summary judgment, or any appeal therefrom. Despite removing such risk, far from accepting a significant reduction in the potential damages, the Agreement provides nearly 100% of the total

damages that could have been recovered at trial. Phillips Decl. at ¶ 18; *see also Roth v. Geico Gen. Ins. Co.*, No. 16-cv-62942WPD, 2020 U.S. Dist. LEXIS 253012, at *16 (S.D. Fla. Aug. 28, 2020) ("This Court sees no reason why it would be fairer to reduce the recovery of Class Members who take the minimal step of submitting a claim merely to benefit Class Members who, even with robust Notice and a simple claims process with prepaid postage and almost entirely pre-filled forms, decline to submit a claim.").

For all such reasons, and as will be more fully explained in the Motion for Final Approval, Plaintiffs believe the Agreement is fair and reasonable to the Class.

Finally, for the convenience of the Court, below is a proposed preliminary schedule outlining the dates set forth in the Settlement Agreement, which comports with the Schedule outlined in the proposed Order preliminarily approving of the proposed Settlement, which is affixed as Exhibit 1 to the Settlement Agreement.

## PROPOSED PRELIMINARY SCHEDULE

| EVENT | PROPOSED DUE DATE |
| --- | --- |
| Send Mailed Notice and Email Notice | 60 days after Preliminary Approval |
| Send Subsequent Mailed Notices and Email Notices | At a date to be determined by the Settlement Administrator |
| Plaintiffs' Motion for Final Approval | 45 days before Final Approval Hearing |
| Opt-Out Deadline | 30 days before Final Approval Hearing |
| Objection Deadline | 30 days before Final Approval Hearing |
| Final Approval Hearing | _____ (or as soon thereafter, as is convenient for the Court) |
| Claims Deadline | 15 days after Final Approval Hearing |

## CONCLUSION

Plaintiffs respectfully request that the Court grant preliminary approval of the proposed settlement (attached as Exhibit A), and enter an order of preliminary approval that includes the content of the proposed order attached as Exhibit 1 to the Agreement. The proposed preliminary approval order approves the form of notice to be given to the class, establishes a schedule and process for the submission of any objections or requests for exclusion from the class, and provides for a fairness hearing to be held by the Court.

Dated: September 22, 2022

Respectfully submitted,

By: /s/ Andrew Shamis
Andrew J. Shamis, Esq.
Ohio Bar No. 100846
**SHAMIS & GENTILE, P.A.**
14 NE First Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299
ashamis@shamisgentile.com

/s/ Jake Phillips
Jacob L. Phillips
FBN: 0120130
Edmund A. Normand
FBN: 865590
Normand PLLC
3165 McCrory Place, Ste. 175
Orlando, FL 32803
(407) 603-6031
service@ednormand.com
ed@ednormand.com

**SPANGENBERG SHIBLEY & LIBER LLP**
Stuart E. Scott (0064834)
sscott@spanglaw.com
Kevin C. Hulick (0093921)

40416569.1

khulick@spanglaw.com
1001 Lakeside Avenue East, Suite 1700
Cleveland, Ohio 44114
Telephone: (216) 696-3232

Scott Edelsberg (admitted *pro hac vice*)
**EDELSBERG LAW, P.A.**
20900 NE 30th Ave, Suite 417
Aventura, Florida 33180
Telephone: 305-975-3320
scott@edelsberglaw.com

Rachel Dapeer (admitted *pro hac vice*)
**DAPEER LAW, P.A.**
20900 NE 30th Ave, Suite 417
Aventura, Florida 33180
Telephone: 305-610-5223
rachel@dapeer.com

#### CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel identified below via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner.

Respectfully submitted,
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave., Suite 705
Miami, FL 33132
Telephone (305) 479-2299
Facsimile (786) 623-0915
 Email: efilings@shamisgentile.com

By:     */s/ Andrew J. Shamis*
         Andrew J. Shamis, Esq.

40416569.1