IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| SHARON MIDDLETON, CHARLES CLENDENIN, THERESA GRELA, MICHAEL JACKSON, LAUREN HUFFMAN, NICHOLE HOLLAND and WENDALL GARTH individually and on behalf of all others similarly situated, | CASE NO.: 1:20-cv-00668-DRC |
| Plaintiffs, | |
| v. | |
| LIBERTY MUTUAL PERSONAL INSURANCE COMPANY, LM GENERAL INSURANCE COMPANY, LIBERTY MUTUAL FIRE INSURANCE COMPANY and SAFECO INSURANCE COMPANY OF ILLINOIS | |
| Defendants, | |

Plaintiffs, Sharon Middleton ("Middleton"), Charles Clendenin ("Clendenin") Theresa Grela ("Grela"), Michael Jackson ("Jackson"), Lauren Huffman ("Huffman"), Nichole Holland ("Holland") and Wendall Garth ("Garth") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, file this Class Action Complaint against Liberty Mutual Personal Insurance Company ("LMPIC") and LM General Insurance Company ("LM General"), Liberty Mutual Fire Insurance Company ("Liberty Fire") and Safeco Insurance Company of Illinois ("Safeco") (collectively "Defendants") and in support thereof state the following:

## NATURE OF THE ACTION

1. This is a class action lawsuit by Plaintiffs, the named insured under a LMPIC, LM General, Liberty Fire or Safeco automobile policy issued for private passenger auto physical

damage coverage, including collision or physical damage other than collision, which requires payment of the applicable sales tax for a damaged or stolen vehicle as part of a payment of loss.

2.  Insureds, such as Plaintiffs and the putative Class Members, pay a premium in exchange for Defendants' promises under its automobile policy.

3.  Nevertheless, Defendants failed to include sales tax in making its loss payment to Class Members in breach of its clear policy promise.

4.  This lawsuit is brought by Plaintiffs individually and on behalf of all other similarly situated insureds who suffered damages due to Defendants' failure to pay sales tax.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because (a) Plaintiffs are members of the putative class, which consists of at least 100 members; (b) Plaintiffs are Ohio and Illinois citizens and Defendants are Massachusetts and Illinois citizens; and (c) the amount in controversy exceeds the sum of $5 million exclusive of interest and costs.

6.  Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and Defendants are subject to personal jurisdiction here.

## PARTIES

7.  Sharon Middleton is and was domiciled in Clermont County, Ohio, and was an Ohio citizen at all times relevant to this lawsuit.

8.  Charles Clendenin is and was domiciled in Clermont County, Ohio, and was an Ohio citizen at all times relevant to this lawsuit.

9.  Theresa Grela is and was domiciled in Lake County, Illinois, and was an Illinois citizen at all times relevant to this lawsuit.

10. Michael Jackson is and was domiciled in Lake County, Illinois, and was an Illinois citizen at all times relevant to this lawsuit.

11. Lauren Huffman is and was domiciled in Lake County, Illinois, and was an Illinois citizen at all times relevant to this lawsuit.

12. Nichole Holland is and was domiciled in Lake County, Illinois, and was an Illinois citizen at all times relevant to this lawsuit.

13. Wendall Garth is and was domiciled in Cuyahoga County, Ohio, and was an Ohio citizen at all times relevant to this lawsuit.

14. LMPIC is and was, at all times relevant to this lawsuit, a foreign corporation located in, incorporated in, and with its principal place of business in Massachusetts. LMPIC is authorized to transact insurance in Ohio.

15. LM General is and was, at all times relevant to this lawsuit, a foreign corporation located in, incorporated in, and with its principal place of business in Massachusetts. LM General is authorized to transact insurance in Ohio.

16. Liberty Fire is and was, at all times relevant to this lawsuit, a foreign corporation located in, incorporated in, and with its principal place of business in Massachusetts. Liberty Fire is authorized to transact insurance in Ohio.

17. Safeco is and was, at all times relevant to this lawsuit, a foreign corporation located in, incorporated in, and with its principal place of business in Illinois. Safeco is authorized to transact insurance in Ohio.

## FACTUAL ALLEGATIONS

*A.*     *The Insurance Policy*

18. All entities under the Liberty Mutual brand, including LMPIC, LM General, Liberty Fire and Safeco, utilize the same material policy terms; indeed Defendants (along with all other Liberty Mutual entities) utilize the same policy form.

19. Therefore, the Form Policy issued by LMPIC to the Plaintiff Middleton, the Named Plaintiffs and all putative class members are virtually identical in all material respects. Affixed hereto is the Policy Form issued to Ms. Middleton (the "Policy"). The terms therein are applicable and identical to the terms applicable to the Named Plaintiffs and all putative class members. Exh. A (Policy).

20. In its standardized Policy, Defendants promise to pay for "direct and accidental loss" to a covered auto. *Id*. at 7.

21. In the event that an insured's covered auto sustains loss, Defendants explain, in their "Payment of Loss" section, "[w]e may pay for loss in money or repair or replace the damaged or stolen property." *Id.* at 10.

22. Defendants further promise, "[i]f we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property." *Id.*

B. *Plaintiff Sharon Middleton's Accident*

23. At all times material hereto, Plaintiff Middleton insured a 2011 Nissan Juke VIN # JN8AF5MV2BT017863, under the Policy issued by LMPIC.

24. On or about May 7, 2020, Plaintiff Middleton was involved in an accident while operating the insured vehicle. As a result of that accident, Plaintiff Middleton filed a property damage claim with claim number PD000-042520539-01.

25. Following the filing of said claim, LMPIC determined that the Insured Vehicle was a total loss with a base value of $5,676.00 and an adjusted vehicle value of $5,806.04. A copy of Plaintiff Middleton's Market Valuation Report is attached hereto as **Exhibit B.**

26. LMPIC calculates the base and adjusted value through a third- party vendor ("CCC"), which bases vehicle valuations on the cost to purchase similar vehicles with similar conditions and mileage. First, CCC identifies the underlying value of comparable vehicles, from which it adjusts based on any differences in mileage, trim, options, *etc. See* Exh. B.

27. CCC determined that the amount for sales tax on the adjusted vehicle value was $391.91, and should be included in the total loss payment to Plaintiff Middleton. *Id* at 1.

28. However, LMPIC *removed* sales tax when making payment.

29. Instead, LMPIC paid only the adjusted vehicle value of $5,806.00, added $788.00 for Better Car Replacement, and subtracted the deductible of $500.00 for a total payment of $6,094.00. A copy of Plaintiff Middleton's Settlement Breakdown is attached hereto as **Exhibit C.**

30. By failing to include sales tax in making payment for the loss, LMPIC breached its contract with Plaintiff Middleton.

31. Nothing in the Policy unambiguously excludes sales tax or contradicts LMPIC's promise to pay sales tax where it pays for the loss in money. To the extent the applicable limitation on liability is the vehicle's actual cash value, such limitation does not operate to exclude or subvert LMPIC's explicit and unambiguous promise to include payment for sales tax in its loss payments.

32. Similarly, LMPIC failed to pay sales tax to all members of the Classes, defined below, and thus breached its contract with all such Class Members.

**C.** *Plaintiff Charles Clendenin's Accident*

33. At all times material hereto, Plaintiff Clendenin insured a 2013 Mazda 5 Grand Touring VIN # JM1CW2DL8D0156787, under the Policy issued by LM General.

34. On or about February 6, 2020, Plaintiff Clendenin was involved in an accident while operating the insured vehicle. As a result of that accident, Plaintiff Clendenin filed a property damage claim with claim number PD000-041954055-01.

35. Following the filing of said claim, LM General determined that the Insured Vehicle was a total loss with a base value and an adjusted vehicle value of $6,601.00. A copy of Plaintiff Clendenin's Market Valuation Report is attached hereto as **Exhibit D.**

36. LM General calculates the base and adjusted value through a third- party vendor ("CCC"), which bases vehicle valuations on the cost to purchase similar vehicles with similar conditions and mileage. First, CCC identifies the underlying value of comparable vehicles, from which it adjusts based on any differences in mileage, trim, options, *etc. See* Exh. D.

37. CCC determined that the amount for sales tax on the adjusted vehicle value was $462.07, and should be included in the total loss payment to Plaintiff Clendenin. *Id* at 1.

38. However, LM General *removed* sales tax when making payment.

39. Instead, LM General paid only the adjusted vehicle value of $6,601.00 and subtracted the deductible of $500.00 for a total payment of $6,101.00. A copy of Plaintiff Clendenin's Settlement Breakdown is attached hereto as **Exhibit E**.

40. By failing to include sales tax in making payment for the loss, LM General breached its contract with Plaintiff Clendenin.

41. Nothing in the Policy unambiguously excludes sales tax or contradicts LM General's promise to pay sales tax where it pays for the loss in money. To the extent the applicable limitation on liability is the vehicle's actual cash value, such limitation does not operate to exclude

or subvert LM General's explicit and unambiguous promise to include payment for sales tax in its loss payments.

42. Similarly, LM General failed to pay sales tax to all members of the Classes, defined below, and thus breached its contract with all such Class Members.

D. *Plaintiff Theresa Grela's Accident*

43. At all times material hereto, Plaintiff Grela insured a 2003 Lexus ES 300 VIN # JTHBF30G730128499, under the Policy issued by LM General.

44. On or about December 16, 2017, Plaintiff Grela was involved in an accident while operating the insured vehicle. As a result of that accident, Plaintiff Grela filed a property damage claim with claim number 036665594-0001.

45. Following the filing of said claim, LM General determined that the Insured Vehicle was a total loss with a base value of $3,515.00 and an adjusted vehicle value of $3,481.00. A copy of Plaintiff Grela's Market Valuation Report is attached hereto as **Exhibit F.**

46. LM General calculates the base and adjusted value through a third-party vendor ("CCC"), which bases vehicle valuations on the cost to purchase similar vehicles with similar conditions and mileage. First, CCC identifies the underlying value of comparable vehicles, from which it adjusts based on any differences in mileage, trim, options, *etc. See* Exh. F.

47. CCC determined that the amount for sales tax on the adjusted vehicle value was $243.67, and should be included in the total loss payment to Plaintiff Grela. *Id* at 1.

48. However, LM General *removed* sales tax when making payment. Instead, LM General paid only the adjusted vehicle value of $3,481.00 and subtracted the deductible of $500.00 for a total payment of $2,981.00. A copy of Plaintiff Grela's Settlement Breakdown is attached hereto as **Exhibit G**.

49. By failing to include sales tax in making payment for the loss, LM General breached its contract with Plaintiff Grela.

50. Nothing in the Policy unambiguously excludes sales tax or contradicts LM General's promise to pay sales tax where it pays for the loss in money. To the extent the applicable limitation on liability is the vehicle's actual cash value, such limitation does not operate to exclude or subvert LM General's explicit and unambiguous promise to include payment for sales tax in its loss payments.

51. Similarly, LM General failed to pay sales tax to all members of the Classes, defined below, and thus breached its contract with all such Class Members.

E. *Plaintiff Michael Jackson's Accident*

52. At all times material hereto, Plaintiff Jackson insured a 2013 Hyundai Sonata Limited VIN # 5NPEC4AC5DH510608, under the Policy issued by LM General.

53. On or about July 1, 2020, Plaintiff Jackson was involved in an accident while operating the insured vehicle. As a result of that accident, Plaintiff Jackson filed a property damage claim with claim number 042924902-0001.

54. Following the filing of said claim, LM General determined that the Insured Vehicle was a total loss with a base value of $5,418.00 and an adjusted vehicle value of $5,099.88. A copy of Plaintiff Jackson's Market Valuation Report is attached hereto as **Exhibit H.**

55. LM General calculates the base and adjusted value through a third-party vendor ("CCC"), which bases vehicle valuations on the cost to purchase similar vehicles with similar conditions and mileage. First, CCC identifies the underlying value of comparable vehicles, from which it adjusts based on any differences in mileage, trim, options, *etc. See* Exh. H.

56. CCC determined that the amount for sales tax on the adjusted vehicle value was $522.74, and should be included in the total loss payment to Plaintiff Jackson. *Id* at 1.

57. However, LM General *removed* sales tax when making payment. Instead, LM General paid only the adjusted vehicle value of $5,099.88 and subtracted the deductible of $800.00 for a total payment of $4,299.88. A copy of Plaintiff Jackson's Settlement Breakdown is attached hereto as **Exhibit I**.

58. By failing to include sales tax in making payment for the loss, LM General breached its contract with Plaintiff Jackson.

59. Nothing in the Policy unambiguously excludes sales tax or contradicts LM General's promise to pay sales tax where it pays for the loss in money. To the extent the applicable limitation on liability is the vehicle's actual cash value, such limitation does not operate to exclude or subvert LM General's explicit and unambiguous promise to include payment for sales tax in its loss payments.

60. Similarly, LM General failed to pay sales tax to all members of the Classes, defined below, and thus breached its contract with all such Class Members.

**F.**   *Plaintiff Lauren Huffman's Accident*

61. At all times material hereto, Plaintiff Huffman insured a 2007 Volkswagen Jetta VIN # 3VWEF71KX7M081204, under the Policy issued by Liberty Fire.

62. On or about February 21, 2016, Plaintiff Huffman was involved in an accident while operating the insured vehicle. As a result of that accident, Plaintiff Huffman filed a property damage claim with claim number 033340628-01.

63. Following the filing of said claim, Liberty Fire determined that the Insured Vehicle was a total loss with a market drive value of $7,773.00. A copy of Plaintiff Huffman's Market Valuation Report is attached hereto as **Exhibit J.**

64. Liberty Fire calculates the base and adjusted value through a third-party vendor ("Autosource"), which bases vehicle valuations on the cost to purchase similar vehicles with similar conditions and mileage. First, Autosource identifies the underlying value of comparable vehicles, from which it adjusts based on any differences in mileage, trim, options, *etc. See* Exh. J.

65. Autosource determined that the amount for sales tax on the market driven value was $657.31, and should be included in the total loss payment to Plaintiff Huffman. *Id* at 4.

66. However, Liberty Fire *removed* sales tax when making payment. Instead, Liberty Fire paid only the market driven value of $7,733.00 and subtracted the deductible of $500.00 for a total payment of $7,233.00. A copy of Plaintiff Huffman's Settlement Breakdown is attached hereto as **Exhibit K**.

67. By failing to include sales tax in making payment for the loss, Liberty Fire breached its contract with Plaintiff Huffman.

68. Nothing in the Policy unambiguously excludes sales tax or contradicts Liberty Fire's promise to pay sales tax where it pays for the loss in money. To the extent the applicable limitation on liability is the vehicle's actual cash value, such limitation does not operate to exclude or subvert Liberty Fire's explicit and unambiguous promise to include payment for sales tax in its loss payments.

69. Similarly, Liberty Fire failed to pay sales tax to all members of the Classes, defined below, and thus breached its contract with all such Class Members.

**G.** ***Plaintiff Nichole Holland's Accident***

70. At all times material hereto, Plaintiff Holland insured a 2016 Hyundai Elantra SE Automatic VIN # 5NPDH4AE6GH728804, under the Policy issued by LMPIC.

71. On or about October 7, 2019, Plaintiff Holland was involved in an accident while operating the insured vehicle. As a result of that accident, Plaintiff Holland filed a property damage claim with claim number PD000-041085353-03.

72. Following the filing of said claim, LMPIC determined that the Insured Vehicle was a total loss with a base value of $8,967.00 and an adjusted vehicle value of $8,025.04. A copy of Plaintiff Holland's Market Valuation Report is attached hereto as **Exhibit L.**

73. LMPIC calculates the base and adjusted value through a third-party vendor ("CCC"), which bases vehicle valuations on the cost to purchase similar vehicles with similar conditions and mileage. First, CCC identifies the underlying value of comparable vehicles, from which it adjusts based on any differences in mileage, trim, options, *etc. See* Exh. L.

74. CCC determined that the amount for sales tax on the adjusted vehicle value was $822.57, and should be included in the total loss payment to Plaintiff Holland. *Id* at 1.

75. However, LMPIC *removed* sales tax when making payment.

76. Instead, LMPIC paid only the adjusted vehicle value of $8,025.04 and subtracted the deductible of $2,500.00 for a total payment of $5,525.04. A copy of Plaintiff Holland's Settlement Breakdown is attached hereto as **Exhibit M**.

77. By failing to include sales tax in making payment for the loss, LMPIC breached its contract with Plaintiff Holland.

78. Nothing in the Policy unambiguously excludes sales tax or contradicts LMPIC's promise to pay sales tax where it pays for the loss in money. To the extent the applicable limitation

on liability is the vehicle's actual cash value, such limitation does not operate to exclude or subvert LMPIC's explicit and unambiguous promise to include payment for sales tax in its loss payments.

79. Similarly, LMPIC failed to pay sales tax to all members of the Classes, defined below, and thus breached its contract with all such Class Members.

### H. Plaintiff Wendall Garth's Accident

80. At all times material hereto, Plaintiff Garth insured a 2014 Jeep Patriot VIN # 1C4NJRFB2ED660735, under the Policy issued by Safeco.

81. On or about January 18, 2021, Plaintiff Garth was involved in an accident while operating the insured vehicle. As a result of that accident, Plaintiff Garth filed a property damage claim with claim number PD000-044547582-01.

82. Following the filing of said claim, Safeco determined that the Insured Vehicle was a total loss with a base value of $6,944.00 and an adjusted vehicle value of $7,057.00. A copy of Plaintiff Garth's Market Valuation Report is attached hereto as **Exhibit N.**

83. Safeco calculates the base and adjusted value through a third- party vendor ("CCC"), which bases vehicle valuations on the cost to purchase similar vehicles with similar conditions and mileage. First, CCC identifies the underlying value of comparable vehicles, from which it adjusts based on any differences in mileage, trim, options, *etc. See* Exh. N.

84. CCC determined that the amount for sales tax on the adjusted vehicle value was $564.56, and should be included in the total loss payment to Plaintiff Garth. *Id* at 1.

85. However, Safeco *removed* sales tax when making payment.

86. Instead, Safeco paid only the adjusted vehicle value of $7,057.00 and subtracted the deductible of $500.00 for a total payment of $6,557.00. A copy of Plaintiff Garth's Settlement Breakdown is attached hereto as **Exhibit O**.

87. By failing to include sales tax in making payment for the loss, Safeco breached its contract with Plaintiff Garth.

88. Nothing in the Policy unambiguously excludes sales tax or contradicts Safeco's promise to pay sales tax where it pays for the loss in money. To the extent the applicable limitation on liability is the vehicle's actual cash value, such limitation does not operate to exclude or subvert Safeco's explicit and unambiguous promise to include payment for sales tax in its loss payments.

89. Similarly, Safeco failed to pay sales tax to all members of the Classes, defined below, and thus breached its contract with all such Class Members.

## CLASS-ACTION ALLEGATIONS

90. Plaintiffs bring this action seeking representation of a class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

91. Plaintiffs assert claims for breach of contract on behalf of the classes (hereafter the "Classes") defined as follows:

> **OH Sales Tax Class**: All Insureds, under any Ohio personal automobile insurance policy issued by Liberty Mutual Personal Insurance Company ("LMPIC") , LM General Insurance Company ("LM General"), or Safeco Insurance Company of Illinois ("Safeco") covering a private passenger vehicle with auto physical damage coverage for comprehensive or collision loss where such vehicle was declared a total loss, who made a first-party claim for total loss, and whose claim was adjusted as a total loss, within the two-year time period prior to the date on which the Middleton and Garth Actions were filed who are mailed class notice, and do not timely opt out from the settlement class.

> **IL Sales Tax Class:** All Insureds, under any Illinois personal automobile insurance policy issued by LMPIC, LM General, or Liberty Mutual Fire Insurance Company ("Liberty Fire") covering a private passenger vehicle with auto physical damage coverage for comprehensive or collision loss where such vehicle was declared a total loss, who made a first-party claim for total loss, and whose claim was adjusted as a total loss, within the ten year time period prior to the date on which the various claims in the Grela Action were and who are mailed class notice and do not timely opt out from

the settlement class.

92. Excluded from the Classes are Defendants and their affiliates, parents, and subsidiaries, officers and employees, governmental entities, the judge to whom this case is assigned, and the judge's court staff and immediate family.

93. **Numerosity:** Although the precise number of class members is unknown to Plaintiffs at this time and can only be determined through appropriate discovery, Plaintiffs believe that because Defendants are some of the largest motor vehicle insurers in the State of Ohio and wrote hundreds of millions of dollars of private-passenger physical damage coverage premiums during the relevant time period, the classes of persons affected by Defendants' unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that joinder of all class members is impractical, and likely numbers in the tens of thousands. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendants pursuant to standardized insurance policy language, and results in the retention by Defendants of insurance benefits and monies properly owed to Plaintiffs and the class members. Thus, numerosity within the meaning of Fed. R. Civ. P. 23(a)(1) is established.

94. **Commonality**: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, namely, whether sales tax should be paid as part of a payment of loss under the Policy.

95. **Typicality**: Plaintiffs' claims and defenses are typical of the claims of class members' claims. Defendants injured Plaintiffs and class members through uniform misconduct and Plaintiffs' legal claims arise from the same core practices—namely, Defendants' failure to pay sales tax. Plaintiffs suffered the same harm as all class members: unpaid sales tax due under their Policies.

96. **Adequacy**: Plaintiffs are adequate class representatives because their interests do not conflict with class members' interests, and they will fairly and adequately protect these interests. Plaintiffs' counsel are experienced in litigating consumer class actions and complex litigation and have specific experience successfully litigating similar disputes as class counsel.

97. **Predominance**: The issues common to the Class Members predominate over individual issues (if any) within the meaning of Fed. R. Civ. P. 23(b)(3). The common issues articulated herein are not only the central issues to this litigation, they are virtually the only issues relevant to this litigation. Any individual issues are a product only of the fact that the value of vehicles varies – because sales tax is a percentage of underlying value, the *amount* of sales tax varies. However, any variance is resolved by a ministerial and mechanical application of uniform rates imposed by the State of Ohio and is independent from any question concerning the merits of the claim. Quite frankly, there are no relevant individual questions important to this litigation.

98. **Superiority**: Moreover, class treatment is superior to any other treatment within the meaning of Fed. R. Civ. P. 23(b)(3). Class treatment provides for a fair and efficient adjudication of the controversy because it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate consistent adjudication. Furthermore, because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiffs know of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

99. The issues related to Plaintiffs' claims do not vary from the issues relating to the claims of the other members of the classes such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

100. The relevant Policy provisions for each Class Member are the same. The relevant law relating to the interpretation and application of those Policy provisions for each Class Member is the same. There is the potential for inconsistent or varying adjudications concerning individual Class Members. Allowing the issues to be adjudicated in a piecemeal fashion likely would result in certain Class Members who are not parties to individual adjudications having their rights impaired or impeded without notice or adequate representation.

101. Defendants' breach of Policy provisions requiring them to pay ACV on total loss claims is a continuing breach and violation of Policy terms.

## CLAIM FOR BREACH OF CONTRACT

102. Plaintiffs incorporates by reference each allegation set forth in the preceding paragraphs.

103. Plaintiffs bring this claim individually and on behalf of the other Class members.

104. Plaintiffs and each of the other Class members were parties to insurance contracts with Defendants as described herein.

105. Plaintiffs and each of the other Class members were insured under a policy issued by Defendants.

106. Plaintiffs and each of the other Class members' insurance contracts are governed by Ohio and Illinois law.

107. Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendants determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

108. Pursuant to the above-described contractual provisions, upon the loss to their insured vehicles, Plaintiffs and each of the other Class members were each owed the sales tax as part of their loss payment.

109. Nevertheless, Defendants failed to include sales tax in making loss claim payments.

110. Defendants' failure to pay sales tax as part of the loss claim payment constitutes a material breach of their contracts with Plaintiffs and each of the other Class members.

111. As a result of the contractual breaches, Plaintiffs and each of the other Class members have been damaged, and are entitled to sums representing the benefits owed for sales tax, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs, individually and on behalf of the putative Classes, demand relief and judgment as follows:

1. An order certifying the proposed Classes, as requested herein, and appointing Plaintiffs' undersigned attorneys as Counsel for the Classes;

2. An award of compensatory damages, and all other available damages, for Plaintiffs and the other Class members against Defendants, as well as pre- and post- judgment interests on any amounts awarded;

3. An order enjoining Defendants from continuing the illegal practices alleged herein, and for other injunctive relief as is proven appropriate in this matter;

4. An award of attorney's fees, expenses, and costs of suit as appropriate pursuant to applicable law

5. An order providing such other and further forms of relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all issues so triable.

Dated: September 29, 2022

                                              Respectfully submitted,

*/s/ Andrew J. Shamis*
Andrew J. Shamis
Ohio Bar No. 100846
**SHAMIS & GENTILE, P.A.**
14 NE First Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

**SPANGENBERG SHIBLEY & LIBER LLP**
Stuart E. Scott (0064834)
sscott@spanglaw.com
Kevin C. Hulick (0093921)
khulick@spanglaw.com
1001 Lakeside Avenue East, Suite 1700
Cleveland, Ohio 44114
Telephone: (216) 696-3232

Scott Edelsberg (admitted *pro hac vice*)
**EDELSBERG LAW, P.A.**
20900 NE 30th Ave, Suite 417
Aventura, Florida 33180
Telephone: 305-975-3320
scott@edelsberglaw.com

Rachel Dapeer (admitted *pro hac vice*)
**DAPEER LAW, P.A.**
20900 NE 30th Ave, Suite 417
Aventura, Florida 33180

Telephone: 305-610-5223
rachel@dapeer.com

*Counsel for Plaintiffs
and the Proposed Classes*

* Applications for admission *pro hac vice* to be filed