**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **SHARON MIDDLETON, et al.,** | ) | **CASE NO: 1:20-cv-668** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE DOUGLAS R. COLE** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **LIBERTY MUTUAL PERSONAL** | ) | |
| **INSURANCE COMPANY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT**

Plaintiffs Sharon Middleton, Charles Clendenin, Wendell Garth, Theresa Grela, Michael Jackson, Lauren Huffman, and Nichole Holland (Plaintiffs) submit this unopposed Motion and respectfully request the Court grant final approval of the proposed class action settlement described in detail in the Class Action Settlement Agreement and exhibits thereto ("Agreement"), Dkt. No. 53-1, which is incorporated by reference, between Plaintiffs and Defendants Liberty Mutual Personal Insurance Company, LM General Insurance Company, Safeco Insurance Company of Illinois, and Liberty Mutual Fire Insurance Company (together, "Defendants" or "Liberty Mutual") and enter the proposed Order and Final Judgment affixed hereto as Exhibit 1 (or a substantively similar order).

I.      **CONCISE STATEMENT OF THE RELIEF REQUESTED**

Plaintiffs file this motion requesting the Court grant final approval of this class action settlement and certify a settlement class, which would resolve the claims of Plaintiffs and the Class

Members in their entirety. Plaintiffs request that the Court enter an order of final approval that includes the content of the proposed order attached as Exhibit 1 hereto.

The proposed final approval Order approves of and confirms the form of notice given to the Class was adequate, reasonable, and consistent with due process, approves the benefits provided to the Class as fair and adequate, and approves the attorneys' fees and costs and service awards to the Plaintiffs are reasonable.

## II.    STATEMENT OF THE BASIS FOR THE REQUEST

The Parties reached the Settlement Agreement after over sixty-one months of litigation and the Agreement is the product of substantial, contentious negotiations between the parties through mediation facilitated by respected mediator Mike Ungar. *See* McLaughlin on Class Actions § 6:7 (12th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.").

The Parties have reached a settlement agreement for the purpose of making available to Settlement Class Members a Settlement Fund of $14,404.000.00. Settlement Class Members who submit a claim will receive payment of sales tax in the amount of the applicable state and local surtax at the time of loss, calculated as a percentage of the underlying vehicle value ("ACV Sales Tax"). If Defendants originally included a partial sales tax amount in the total-loss payment, the Settlement Class Member will receive ACV Sales Tax less that partial amount originally included in the total-loss payment. This constitutes 100% of the damages sought by Plaintiffs in the

respective Complaints and Plaintiffs for total-loss comprehensive and/or collision auto claims.[1] Dkt. No. 53-2 at ¶¶ 17-18. Moreover, Plaintiffs successfully obtained a Settlement with a robust Notice plan—direct notice on three separate occasions and via email on an additional five occasions—as well as a simple and straightforward claiming process and an extremely narrow release. Agreement at ¶¶ 53-56. This Court already found that the proposed Settlement is "fair, reasonable, and adequate and likely to be approved at a Final Approval Hearing" and directed Notice to be provided to determine whether any Class Members disagreed and—if so—to consider their objections. Dkt. No. 54 at 2. Following the Court-approved Notice plan, including the right to opt out or to object to the proposed Settlement, not a single class member has lodged an objection or opted out. Exh. B at ¶¶ 23-24.

### III. MEMORANDUM OF LEGAL AUTHORITY

#### a. Litigation Background

This case involves allegations that Defendants breached automobile insurance policies issued to Plaintiffs and members of the proposed class by failing to include in payments for total loss vehicles an amount for sales tax calculated as the applicable percentage of the totaled vehicle's adjusted value. Dkt. No. 53-2 at ¶ 4. In both Illinois and Ohio, Defendants' practice and procedure concerning sales tax usually depended on whether the insured submitted proof of replacement within thirty days of the claim.[2] If not, Defendants did not pay any sales tax as part of their total-

---

[1] If the claims submitted are for an amount exceeding the Settlement Fund, there will be a pro rata reduction of claim payments. Agreement at ¶ 41. But Plaintiffs evaluated the spreadsheet data and sample claims to identify how often Defendants reimbursed (fully or partially) sales tax to its insureds. Based on that review, the Fund amounts are that which Plaintiffs are confident would satisfy all claims—as such, Plaintiffs do not anticipate any claim payments under the Settlement will be for less than 100% of the Class Members' alleged damages.

[2] This is because both Illinois and Ohio have regulations setting forth minimum standards which permit insurers the option of conditioning payment of sales tax on proof of replacement. Plaintiffs'

loss claim payment. If the insured submitted proof of replacement, Defendants would reimburse the incurred sales tax up to the amount that would have been owed on the total-loss vehicle. *Id*. at ¶ 5. As a part of the proposed Settlement Agreement, Defendants agreed moving forward in Ohio and Illinois to include in payments for total loss vehicles an amount for sales tax calculated as the applicable state and local percentage of the adjusted vehicle value without requiring insureds to show proof of replacement. *Id*. at ¶ 20.

The litigation history—including discovery, briefing practice, and settlement negotiations—has been extensively detailed in the motions for preliminary approval and for attorneys' fees and costs, including in the declaration submitted by Jacob Phillips (Dkt. No. 53-2) in support thereof. Rather than once again repeating these facts and the litigation history, Plaintiffs incorporate herein those previous submissions.

### b. The Proposed Settlement

The proposed settlement requires Defendants to pay to Settlement Class Members who submit a valid claim a cash payment in the amount of ACV Sales Tax, less any amount in sales tax that was included in the original total-loss payment. Agreement at ¶¶ 41, 73, 75-76. Defendants have also agreed (and, in fact, have already changed their business practices) to include ACV Sales Tax without precondition in its total-loss claim, calculated as the applicable state plus local percentage on the adjusted vehicle value of the total-loss vehicle. *Id.* at ¶ 87. Defendants have agreed to separately pay attorneys' fees and costs up to $3,168,880.00, Service Awards of up to $5,000.00 for each Plaintiff, and settlement administration costs, none of which will reduce or impact in any way the damages to which Class Members are entitled.

---

theory is that such minimum standards do not govern given that Defendants' Policy promises to pay sales tax without precondition of replacement.

### 1. $17.67 Million Monetary Value

The monetary benefits total approximately $17,684,880.00, which is the sum of: (i) $14,404,000.00 Settlement Payment Fund, (ii) attorneys' fees (paid separate from Settlement Fund) of up to $3,168.880.00, and (iii) Settlement Administration costs (paid separate from Settlement Fund) of an estimated $112,000.00. *See Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016) (explaining that the total Class benefit "includes the benefit to class members, the attorney's fees and may include costs of administration") (cleaned up); *Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at *8 (S.D. Ohio Apr. 30, 2018) (to calculate total settlement benefits amount, "courts include all amounts benefitting the class, including those amounts typically borne by the class, such as attorneys' fees and notice and administration costs").[3] Determining the amount that was paid for sales tax on many of the claims may require a detailed review of the claim file to assess the basis for each payment that was made and what was (or was not) included in that payment. Dkt. No. 53-2 at ¶ 21. The proposed settlement provides for Defendant to review the files of class members who make claims in the settlement to make these determinations, which will be confirmed by Class Counsel.

### 2. Likelihood of Success is Uncertain

If the case were to proceed through final judgment in the three cases, and then an appeal to the Sixth Circuit (as for the *Garth* case and the Middleton case) and the Seventh Circuit (as for the *Grela* case) both sides would bear risk. The putative class would bear the risk of recovering nothing if class certification were denied or reversed on appeal, or if judgment was entered in favor of

---

[3] In other words, attorneys' fees and costs and settlement administration costs would normally be borne by the Class and reduce their payments. So where, as here, a defendant agrees to pay those costs separately and they are not deducted from class member payments, they are necessarily then considered part of the overall value of the settlement, as these courts (and others) have explained.

Defendants or a judgment in favor of the class was overturned on appeal. *Id*. at ¶¶ 12-13. Notably, both the Sixth Circuit and the Seventh Circuit have recently ruled in favor of an insurance company on similar claims, and the Seventh Circuit in particular agreed with Defendants that an insurance regulation is incorporated into insurance policies and establishes the relevant standard for whether sales tax is owed on a total-loss claim (albeit under difference insurance policy language). *Id.* at ¶ 13.

### 3. The Settlement Provides for a Limited Release, Robust Notice, and a Simple Claims Process

For the convenience of settlement class members in submitting claims, Liberty Mutual will extract information to pre-fill the Class Members' name and address, date of loss, claim number, and estimated payout from the settlement into a spreadsheet. *See* Agreement at Exhibit 2. Notice will be provided via direct mail on ***three*** separate occasions, including a pre-filled, postage-prepaid claim form, and via email on an additional ***five*** occasions (to Class Members for whom Defendants possess an email address). Agreement at ¶¶ 53, 55. The claim submission process is extremely simple, requiring merely that Class Members confirm they were not paid sales tax in connection with the settlement of their claim[4] and that the prefilled information, including their current address, is correct, sign the form, and drop the postage-prepaid form in the mail—and the Settlement also provides for a website where insureds can make the same confirmation and submit the claim form electronically. *Id.* at ¶¶ 53-58. Finally, the Parties have agreed to both Internet Notice—targeted by geography—and a Publication Notice in a state-wide newspaper. *Id.* at ¶¶ 59-60. Additionally, the release is narrowly tailored to the precise claim alleged in this litigation relating to payment of sales tax without precondition. *Id.* at ¶ 33.

---

[4] Liberty Mutual does not maintain class-wide data on sales tax paid to total loss insureds outside of individual claim files.

This type of settlement structure, under which class members submit pre-filled, postage prepaid claim forms if they wish to make a claim for payment in the settlement process, is regularly approved by federal courts. *See, e.g.*, *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016) (affirming a claims-made class action settlement as fair and reasonable); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., No. 1:08-WP-65000 (MDL 2001), 2016 U.S. Dist. LEXIS 130467 (N.D. Ohio Sep. 23, 2016) (approving a settlement that allowed for class members to file one of three different types of claims); *Bastian v. United Servs. Auto. Ass'n*, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla. Nov. 1, 2017) (approving similar claims-made settlement in class action concerning total-loss vehicles where USAA's internal procedure for payment of sales tax in Florida was materially identical to Defendants' procedure in Ohio and Illinois); *Cook v. Gov't Emples. Ins. Co.*, No.: 6:17-cv-891-ORL-40KRS, 2020 U.S. Dist. LEXIS 111956 (M.D. Fla. Jun. 22, 2020) (same); *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 628 (11th Cir. 2015) (same); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 783 (N.D. Oh. 2010) (approving settlement that required claim submissions to establish entitlement to settlement proceeds). Indeed, a Nebraska Court recently approved a virtually identical (albeit much smaller given the number of insureds at issue) settlement entered into by Safeco Insurance Company of Illinois this past Spring. *Wagner v. Safeco Insurance Co. of Illinois*, No. CI20-10735 (Douglas County Dist. Ct., April 15, 2022); *see also Glover v. LM General Insurance Co*., No. 2020-022973-ca-01 (Miami-Dade County, May 20, 2022).

### 4.  Attorneys' Fees Are Reasonable

The proposed settlement further provides that class counsel may make an application for attorneys' fees and costs, which Defendants have agreed to pay the amount approved by the Court, not to exceed $3,168,880.00. Agreement at ¶ 90. This constitutes approximately 18.03% of the

settlement value, *see* Dkt. No. 53-2 at ¶ 25, which is significantly ***below*** the Sixth Circuit's benchmark for attorneys' fees.[5] *Kis v. Covelli Enters.*, Nos. 4:18-cv-54; 4:18-cv-434, 2020 U.S. Dist. LEXIS 93929, at *17, n.69 (N.D. Oh. May 29, 2020) (approving fee award of 30% and citing cases that note the typical range of class action attorneys' fees is 20-30% of settlement value); *Shanahan v. Keybank*, No. 1:19cv2477, 2021 U.S. Dist. LEXIS 50516, at *13 (N.D. Oh. Mar. 16, 2021) (approving fees of 33 1/3%); *see also Gascho*, 822 F.3d at 282 (when conducting a percentage of the fund analysis, "attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class, which includes the benefit to class members, the attorney's fees and may include costs of administration") (cleaned up); *Rikos*, 2018 U.S. Dist. LEXIS 72722, at *8 (to calculate total settlement benefits amount, "courts include all amounts benefitting the class, including those amounts typically borne by the class, such as attorneys' fees and notice and administration costs").

This amount equates to Class Counsel's lodestar, utilizing rates recently approved for each timekeeper in recent class action litigation, with a 2.2 multiplier. Dkt. No. 58-1 (Phillips Supp. Decl.) at ¶¶ 26-27. This is also comfortably within the range courts consistently find reasonable in class litigation. *See generally Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 517 (6th Cir. 1993) (approving 2.0 multiplier); *Shanahan*, 2021 U.S. Dist. LEXIS 50516, at *13 (approving a multiplier of 3.75 in class litigation as reasonable); *Bower v. MetLife, Inc.*, 2012 U.S. Dist. LEXIS 149117, at *23-24 (S.D. Oh. Oct. 17, 2012) (collecting cases demonstrating that multipliers ranging from 1.75 to 5.0 are considered reasonable in class litigation); *Swigart v. Fifth Third Bank*,

---

[5] The difference depends on whether this Court considers the change in business practice and resulting benefits as part of the Settlement benefits for purposes of analyzing attorneys' fees. *Cf. Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339, 1342-43 (S.D. Fla. 2007) (courts consider maximum cash benefits and value of injunctive relief when applying benchmark attorneys' fees of 20%-30%); *see also* Gold Decl. at ¶ 30.

2014 U.S. Dist. LEXIS 94450, at *18 (S.D. Oh. Jul. 11, 2014) (holding that a multiplier of 2.57 "is consistent with other risk multipliers approved in complex class actions in this Circuit"). As such, and as Plaintiff more fully demonstrated in the fee petition (Dkt. No. 58), the attorneys' fees amount is reasonable whether this Court uses the "percentage-of-the-fund" approach or the lodestar approach.

### c. Class Certification Is Warranted

Plaintiffs submit that certification of the proposed Settlement Classes is appropriate, as this Court confirmed in its Order granting preliminary approval. Dkt. No. 54 at 2-3. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Defendants does not oppose certification for settlement purposes. All Fed. R. Civ. P. 23(a) and (b)(3) requirements are satisfied here for the Settlement Classes, defined to include insureds who submitted a first-party total-loss claim under collision or comprehensive coverage during the relevant time periods. *See* Agreement at ¶ 45 (class definitions).

The numerosity requirement is satisfied for purposes of settlement because Defendants' records and spreadsheet data and a review of sample claims demonstrates there are more than 15,000 members in total in the Ohio and the Illinois classes. Dkt. No. 53-2 at ¶ 29. This easily satisfies the numerosity requirement. *See generally Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (explaining that "while there is no strict numerical test, substantial numbers usually satisfy the numerosity requirement").

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The claims must depend on a common contention of which

"its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Sprague v. GMC*, 133 F.3d 388, 397 (6th Cir. 1998) (to satisfy commonality there "need only be one issue common to the class"). Here, the commonality requirement is satisfied because there is a common question of law concerning whether Defendants' standard and uniform Policy promise includes sales tax when making payment in money requires Defendants to pay sales tax without precondition or whether, instead, the total-loss regulations govern and permit Defendants to condition payment of sales tax on proof of replacement or whether there is any "applicable" sales tax to pay if the insured did not replace her totaled vehicle. This issue applies to all claims of the proposed Settlement Classes and every Settlement Class member, and its resolution would resolve an issue central— indeed, dispositive—to every class member claim. Dkt. No. 53-2 at ¶ 30.

Rule 23(a)(3) requires that the class representative's claim(s) be typical of the claims of the Settlement Class. Fed. R. Civ. P. 23(a)(3). Typicality is established where the plaintiff's claim "arises from the same event or practice or course of conduct [as class members]" and are "based on the same legal theory." *Am. Med. Sys.*, 75 F.3d at 1079. In other words, "as goes the claim of the named plaintiff"—favorably or unfavorably—"so go the claims of the class." *Sprague*, 133 F.3d at 399; *see also Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561-562 (6th Cir. 2007) (typicality met where representative's claim was premised on the same injury as class members). Here, the typicality requirement is satisfied because Plaintiffs' claims are based on precisely the same legal theory and "pattern or practice" as the Settlement Class Members: that Defendants owed ACV Sales Tax without precondition and, thus, Defendants' "pattern or practice" of conditioning payment of sales tax on proof of replacement constituted a breach of contract. Dkt. No. 53-5 at ¶

31. Further, Plaintiffs' claims are typical of the Class Members because Plaintiffs and every Class Member were insured under form Policies containing materially identical language. *Id*.

Rule 23(a)(4) requires that "the representative parties ... fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This involves two criteria: "1) the representative must have common interests with unnamed [class] members…and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young*, 693 F.3d at 543. The court should "review[] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Id*. Class Counsel's declaration demonstrates that Plaintiffs adequately performed their duties as class representatives. Dkt. No. 53-2 at ¶ 33. There is no evidence Plaintiffs possess interests in conflict with the proposed Classes. *Id*. The declaration also demonstrates that Class counsel competently represented the proposed class to date and are qualified to represent the settlement class. *Id*. at ¶ 34. Further, Class Counsel has litigated other similar class actions with successful results and have been appointed Class Counsel by numerous courts. *Id*. at ¶¶ 34 38, 47, 50 and 57.

Rule 23 requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance is established where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole…predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564. An absence of individual issues is not necessary. *See Young*, 693 F.3d at 544. Courts routinely find predominance is established where the claim turns on interpretation of uniform contract terms. *E.g.*, *Zehentbauer*

*Family Land, LP v. Chesapeake Expl., L.L.C.*, 935 F.3d 496, 506 (6th Cir. 2019) ("Breach of contract claims arising out of a standardized, form contract ordinarily are suitable for class certification…"). Here, the common question—whether Defendants' form Policy requires payment of ACV Sales Tax without precondition—predominates over any individual question. Essentially the only "individual" question, such as it is, concerns the amount of damages to which Class Members are entitled, which does not preclude a finding of predominance. *Brown v. Electrolux Home Products, Inc.*, 817 F. 3d 1225, 1239 (11th Cir. 2016) (noting the "black-letter rule" that individual questions of damages do not predominate over common questions of liability).

As to the superiority factor, "cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Young*, 693 F.3d at 545. To determine if class-wide adjudication is proper, courts consider: (A) the interest in individually controlling prosecution; (B) whether other litigation has commenced; (C) the desirability of concentrating litigation; and (D) manageability. *Beattie*, 511 F.3d at 564. Here, common issues are central to the litigation and the individual damages are, on average, less than $1,000.00 per class member, which easily satisfies the first prong of the superiority analysis. *See generally Chapman v. Tristar Prods.*, No. 1:16-CV-1114, 2017 U.S. Dist. LEXIS 61767, at *16 (N.D. Oh. Apr. 24, 2017) ("The most compelling rationale for finding superiority in a class action is the existence of a negative value suit, which is where the costs of enforcement in an individual action would exceed the expected individual recovery") (cleaned up). The remaining prongs also favor class treatment: no action was "already commenced" by any member of the class, it is desirable and efficient to concentrate Class Members' identical claims in this forum, and Plaintiffs are unaware of any difficulties in the management of this Settlement. Dkt. No. 53-2 at ¶ 32.

For these reasons, certification of the Settlement Class is appropriate. Although Defendants do not oppose certification of the Settlement class, and have agreed to settle the Settlement Class claims as set forth herein, Defendants do not concede that certification of a litigation class, as opposed to a settlement class, would be appropriate here, and the Parties have stipulated in the Agreement that this Agreement does not constitute a waiver of any defenses Defendants have to a litigated class if the proposed Agreement is not approved.

### d. Final Approval Is Warranted

There is a strong federal policy "favoring settlement of class actions." *UAW v. General Motors Corp.*, 497 F.3d 615, 633 (6th Cir. 2007). All relevant factors as outlined in Fed. R. Civ. P. 23(e) and by the Sixth Circuit favor approval. *See generally Cook*, 2020 U.S. Dist. LEXIS 111956, at *16-17 (explaining that Rule 23 was amended to add factors relevant to approval of class settlements, which was intended to highlight the "core concerns" of Rule 23, but not to displace factors prescribed by appellate courts).[6]

### 1. The Rule 23 Threshold Factors Favor Approval

Fed. R. Civ. P. 23(e)(2) contains two threshold procedural requirements: adequate representation and arms-length negotiations. Both favor preliminary approval here.

The adequate representation analysis under Rule 23(e) "is distinct from Rule 23(a)(4) and is meant to address whether the class representatives possessed sufficient information and knowledge of the claims, issues, and defenses prior to negotiating and settling the claims." *Cook*, 2020 U.S. Dist. LEXIS 111956, at *18. This overlaps with one of the *UAW* factors, i.e., "the

---

[6] Because courts must find it "likely" that Settlement will be approved as a preliminary matter prior to directing Notice to the Class, typically motions for final approval are spent addressing objections from class members. Here, however, there was not a single objection. As such, much of this brief simply repeats the analysis given in the Motion for Preliminary Approval.

amount of discovery engaged in by the parties[.]" 497 F.3d at 631. Here, Plaintiffs engaged in (respectively) twenty-four months, twenty-two months, and fifteen months of litigation and had engaged in significant discovery prior to reaching settlement. Dkt. No. 53-2 at ¶ 8. Over the three cases, Plaintiffs served multiple rounds of discovery requests and third-party public records requests, secured and analyzed thousands of documents, including spreadsheets containing millions of data inputs, engaged in extensive briefing of the merits, including dispositive motions, and retained several expert witnesses. *Id.* at ¶ 9. As for the *Garth* case and the *Middleton* case, Plaintiffs had conducted all discovery necessary to file a complete motion for class certification, which was indeed filed in Middleton. *Id.* at ¶ 6. Also, the undersigned have litigated numerous similar class actions, including against Defendants, and have detailed knowledge about the strengths and weaknesses of the claims, as well as Defendants' data systems, practices, and procedures. *Id.* at ¶ 10; *see* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment (noting that whether Class Counsel had an "adequate information base" depends not only on discovery exchanged in the instant matter, but also any experience they possess from other, similar cases); *Estes v. Willis & Brock Foods, Inc.*, 2022 U.S. Dist. LEXIS 41317, at *6 (E.D. Ky. Mar. 7, 2022) (finding this factor favored approval notwithstanding lack of formal discovery due to, inter alia, the fact that "class members were represented by counsel with significant experience in this type of case."). The Rule 23 adequate representation and the *UAW* "amount of discovery" factors both favor preliminary approval. *See generally Satterly v. Airstream, Inc.*, 2020 U.S. Dist. LEXIS 210868, at *16-17 (S.D. Oh. Sep. 25, 2020) (that plaintiffs had "exchanged written discovery and relevant information, engaged in further independent investigation, confirmed damages calculations with a third-party expert, and conducted additional legal research regarding the claims and defenses in the lawsuits" militated in favor of approving a class settlement).

As for the second procedural factor, settlement was reached only with the assistance of Michael Ungar, an experienced and well-respected mediator. Dkt. No. 53-2 at ¶ 15. The negotiations were unquestionably conducted as arms' length. *See generally Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion"); *Bourne v. Ansara Rest. Grp.*, *Inc.*, 2016 U.S. Dist. LEXIS 114399, at *6 (E.D. Mich. Aug. 26, 2016) (risk of collusion "is minimal" where parties fully briefed a motion to dismiss prior to reaching settlement). In fact, after extensive pre-mediation negotiations and two full days of in-person mediation sessions with Mr. Ungar, the Parties were not able to settle the cases. Only after a re-doubled effort given upcoming deadlines in the three cases did the Parties go back to the negotiations table and reach a final settlement. Moreover, the Parties extensively litigated numerous issues, and Defendants sought to avoid Plaintiffs' claims through numerous means, including dispositive motions on the merits, attempting to moot the claims of class representatives,[7] and so forth. *See generally In re Prandin Direct Purchaser Antitrust Litig.*, 2015 U.S. Dist. LEXIS 5964 (E.D. Mich. Jan. 20, 2015) ("years of hard-fought litigation" was evidence of a lack of collusion). Thus, the Rule 23 "arms' length" and the *UAW* "lack of fraud or collusion" factor both weigh in favor of final approval.

## 2. The Rule 23 Substantive Factors Favor Approval

Fed. R. Civ. P. 23(e)(2)(C)-(D) prescribe the factors relevant to determining whether a proposed Settlement is substantively adequate: the costs and risk of trial and appeal, the method

---

[7] In *Grela*, Liberty Mutual tendered the sales tax allegedly owed to the original plaintiff. The Plaintiff responded by amending her complaint to add additional name plaintiffs and two additional Liberty Mutual companies as defendants.

of claim distribution, the terms of attorneys' fees, and whether class members are treated equitably vis a vi each other.

Plaintiffs believe the Agreement is beneficial to the Class for several reasons, as can be seen between a comparison of the likelihood of ultimate success and the relief secured through the settlement.[8] *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 130467, at *47-50 (N.D. Oh. Sep. 23, 2016) (analyzing the fairness of a proposed settlement by comparing the benefits provided by the settlement to the damages potentially available at trial in light of the odds of success); *see generally In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) ("The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured."). As explained above, the likelihood of success is uncertain. Both the Sixth and Seventh Circuits recently ruled against insureds alleging a materially identical theory. *Wilkerson v. Am. Family Ins. Co.*, 997 F.3d 666 (6th Cir. 2021); *Sigler v. Geico Cas. Co.*, 967 F.3d 658 (7th Cir. 2020). Of particular note is that the Seventh Circuit adopted the argument Defendants make in this litigation, i.e., that minimum regulatory requirements imposed by a state govern the relevant rights and obligations of an insurance policy issued in that state. Plaintiffs disagree with these decisions, but, at the very least, they signify the substantial amount of risk inherent to continuing litigation rather than agreeing to the proposed Settlement. Dkt. No. 53-2 at ¶ 13.

---

[8] Comparing (a) the benefits secured through settlement with (b) the benefits potentially available at trial divided by the chances of success is consistent both with Fed. R. Civ. P. 23(e)(2)(C)(i) and with two *UAW* factors, i.e., "the complexity, expense and likely duration of the litigation and the likelihood of success on the merits." 497 F.3d at 631 (cleaned up).

Given this risk—and even absent it—the value of the Settlement is significant and impressive. First, the Settlement makes available damages in the amount of essentially 100% of the amount that could have been secured at a litigated judgment if Plaintiffs prevailed entirely on the claim.[9] *Id.* at ¶ 18. This level of success in obtaining benefits through a Settlement is extremely rare. *See Lee v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 121998, at *7 (S.D. Fla. Sep. 14, 2015) (settlements that "provide near-complete relief to class members on a claims-made basis" are an "extraordinary result"). Indeed, given the risk of nonsuccess, courts have approved as fair settlements providing for a far lower percentage of potential damages. *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, 2015 U.S. Dist. LEXIS 23482, at *5 (N.D. Ohio Feb. 26, 2015) ("A settlement figure that equates to roughly 18 percent of the best-case-scenario classwide overcharges is an impressive result in view of these possible trial outcomes."); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, 2005 U.S. Dist. LEXIS 9705, at *9 (E.D. Pa. May 19, 2005) (approving of settlement that provided for 11.4% of damages); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000, 2016 U.S. Dist. LEXIS 130467, at *49 (N.D. Oh. Sep. 23, 2016) (settlement providing benefits for a "25% weighted average" of potential damages at trial "compares very favorably" to other class settlements); *Karpik v. Huntington Bancshares Inc.*, 2021 U.S. Dist. LEXIS 38641, at *26 (S.D. Oh. Feb. 21, 2018) ("[T]he settlement represents approximately 30% of the total damages that Plaintiffs claimed at the mediation were associated with Defendants' alleged fiduciary breaches…This is also consistent with other class action settlements."); *Keybank*, 2021 U.S. Dist. LEXIS 50516, at *14

---

[9] Plaintiffs arguably have a minimal claim for prejudgment interest, which is not provided for in the Settlement Agreement and which is the only thing necessitating the "essentially" qualifier.

(approving settlement and finding that "the recovery of approximately 35% of the [potential damages] is a significant benefit to the Settlement Class Members").

Additionally, the Notice to which the Parties agree is robust and comprehensive. Dkt. No. 53-2 at ¶¶ 53-55. Defendant agreed to send individual Notice by direct mail (including provisions to ensure any class member who changed addresses is located) on three separate occasions and (where possible) by email on five occasions, along with Internet Notice and Publication Notice, thus providing significant assurance that Class Members will receive Notice. Agreement at ¶¶ 52-60; *see also Hogan v. Cleveland Ave Rest. Inc.*, No. 2:15-CV-2883, 2019 U.S. Dist. LEXIS 212214, at *10 (S.D. Oh. Dec. 10, 2019) (noting the "robust notice" in determining whether to preliminarily approve a class settlement). Plaintiffs were unable to identify a case with more robust notice—and certainly, courts have characterized as robust Notice plans falling well short of the Notice Plan Plaintiffs were able to secure. *See, e.g.*, *id*. (finding a notice plan that provided for a single postcard, a single email, and a Facebook page to be "robust"); *Cotter v. Lyft, Inc.*, No. 13-cv-04065-VC, 2017 U.S. Dist. LEXIS 38256 (N.D. Cal. Mar. 16, 2017) (characterizing notice plan providing solely for three emails as "extensive and robust").

Second, the "method of processing class-member claims" is simplicity itself: The Claim form is pre-filled, postage pre-paid, and Class Members must simply attest to the information and send the Claim form back (or, if necessary, update their address). Agreement at Exhibit 1; *see Wilson v. EverBank*, 2016 U.S. Dist. LEXIS 15751, at *32-33 (S.D. Fla. Feb. 3, 2016) (finding significant that class members need not submit any evidence or documentation beyond merely "checking a box" which "should take no more than a few minutes for the average claimant to complete."); *Manjunath A. Gokare, P.C. v. Fed. Express Corp.*, No. 2:11-CV-2131-JTF-CGC, 2013 U.S. Dist. LEXIS 203546, at *9 (W.D. Tenn. Nov. 22, 2013) (approving a settlement where

"the claim form is extremely simple, includes a postage-paid, pre-addressed envelope and does not require Settlement Class Members to…provide any back-up documentation."). Moreover, Class Members will be provided a ClaimantID that can be used to access a pre-filled electronic claim, requiring merely an electronic attestation and clicking a "Submit Claim" button.[10]

Third, the terms of the attorneys' fees award weigh in favor of approval of the proposed Settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). The analysis here is "distinct from the Rule 23(h)" analysis, which addresses whether the attorneys' fees amount is reasonable on its own terms, and "instead addresses if and how the attorneys' fees impacted the terms of the Settlement." *Cook*, 2020 U.S. Dist. LEXIS 111956, at *24. Here, the attorneys' fees amount did not impact the substantive Settlement terms at all—indeed, the parties did not even discuss attorneys' fees until after all other Settlement terms were finalized. Dkt. No. 53-2 at ¶ 16. Further, Defendants agreed to separately pay attorneys' fees and costs (in the amount approved by the Court), meaning the attorneys' fee award will not decrease or impact in any way the payments to Settlement Class Members. *See Hicks v. State Farm Fire & Cas. Co.*, 2021 U.S. Dist. LEXIS 227148, at *13 (E.D. Ky. Nov. 8, 2021) (finding that Rule 23(e)(2)(C)(iii) favored settlement "particularly given the fact the fee will not reduce the amount the class members receive"). As such, Rule 23(e)(2)(C)(iii) favors approval of the proposed Settlement.

---

[10] In a recent case, the settlement required class members to identify "contact information, [] the Sonic location where they made their purchase, and the last four digits of the payment card number they used to make the purchase and whether the fraud occurred before February 28, 2018 (if applicable)." *In re Sonic Corp.*, 2019 U.S. Dist. LEXIS 135573, at *15 (N.D. Oh. Aug. 12, 2019). Even this process was considered simple enough to militate in favor of settlement. Here, the proposed Settlement contemplates a far simpler process, where class members merely attest to pre-filled information on a postage-prepaid (or electronic) claim.

Finally, Class Members are clearly treated equitably, in that they will receive the same Notice, the same claim process, are agreeing to precisely the same release, and are entitled to the same benefits: sales tax calculated as a percentage of their vehicle's underlying value.[11]

As such, all the Rule 23(e)(2)(C)-(D) factors militate in favor of approval.

### 3. The Remaining *UAW* Factors Favor Approval

The *UAW* factors that are independent of the Rule 23 factors—i.e., the opinions of class counsel, the reaction by absent Class Members, and the public interest, *see* 497 F.3d at 631—also support approval of the proposed Agreement. Class Counsel possess extensive institutional knowledge of Defendants' procedures and data systems, as well as the relative strengths and weaknesses of the underlying claim, and it is their reasoned judgment that the proposed Settlement is in the best interests of the Class. Dkt. No. 53-2 at ¶¶ 10-11; *see also Brent v. Midland Funding, LLC*, 2011 U.S. Dist. LEXIS 98763, at *49-50 (N.D. Oh. Sep. 1, 2011) ("The Court gives great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of the settlement."); *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, district courts should be hesitant to substitute its own judgment for that of counsel") (cleaned up).

Second, "settlement fosters the goals of certainty, finality and economy, which lie at the heart of our general preference for settlement of class actions." *Berry v. School Dist.*, 184 F.R.D. 93, 106 (W.D. Mich. 1998). And because of the valuable compensatory relief secured and the beneficial change in business practice, the Settlement "does its best to ensure that Defendants can

---

[11] While the Settlement provides for the Named Plaintiffs to petition for a Service Award of no more than $5,000.00, courts generally analyze Service Awards standing alone, and not within the rubric of Fed. R. Civ. P. 23(e)(2)(D). *See, e.g.*, *In re Sonic*, 2019 U.S. Dist. LEXIS 135573, at *16-18 (analyzing Service Awards separately from Rule 23(e)(2)(D)).

continue to provide valuable service to Class Members in an atmosphere that will foster trust and confidence." *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 372 (S.D. Oh. 1990).

And finally, the reaction by absent class members strongly favors approval. After the robust Notice plan was implemented, as of today, 15 days prior to the deadline to object, not a ***single*** member of the Class has lodged an objection and not a single member of the Class has opted out.[12] *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) "A certain number of opt-outs and objections are to be expected in a class action. If only a small number are received, that fact can be viewed as indicative of the adequacy of the settlement."). Courts have found this factor favors approval even with a far higher number of opt outs and/or objections. *See Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 533 (E.D. Ky. 2010) (12 objections and 67 opt outs out of a class of 8,185 was a "miniscule" number and indicated a favorable reaction from absent class members); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 675 (S.D. Oh. 2007) (reaction of absent class members favored approval where there were five objections).

For these reasons, all Rule 23(e) and *UAW* factors militate in favor of approval of the proposed Settlement and the Agreement is fair and reasonable to the Class.

## **CONCLUSION**

Plaintiffs respectfully request that the Court grant final approval of the proposed settlement and enter an Order of Final Approval and Final Judgment that includes the content of the proposed order attached as Exhibit 1.

Respectfully submitted this 20th day of January, 2023.

---

[12] After the deadline expires, Class Counsel will file a declaration from the Settlement Administrator confirming whether any objection was lodged in between the date of this Motion's submission and expiration of the deadline to object.

*/s/ Jake Phillips*
Jacob L. Phillips (admitted *pro hac vice*)
Amy L. Judkins (admitted *pro hac vice*)
**NORMAND PLLC**
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Tel: (407) 603-6031
Fax: (888) 974-2175
jacob.phillips@normandpllc.com
amy.judkins@normandpllc.com

Andrew J. Shamis, Esq.
Ohio Bar No. 100846
**SHAMIS & GENTILE, P.A.**
14 NE First Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299
ashamis@shamisgentile.com

Christopher Gold (admitted *pro hac vice*)
Scott Edelsberg (admitted *pro hac vice*)
**EDELSBERG LAW, P.A.**
20900 NE 30th Ave., Ste 417
Aventura, FL 33180
Tel: (786) 289-9471
chris@edelsberglaw.com
scott@edelsberglaw.com

**SPANGENBERG SHIBLEY & LIBER LLP**
Stuart E. Scott (0064834)
Kevin C. Hulick (0093921)
1001 Lakeside Avenue East, Suite 1700
Cleveland, Ohio 44114
Telephone: (216) 696-3232
sscott@spanglaw.com
khulick@spanglaw.com

Rachel Dapeer (admitted *pro hac vice*)
**DAPEER LAW, P.A.**
20900 NE 30th Ave, Suite 417
Aventura, Florida 33180
Telephone: 305-610-5223
rachel@dapeer.com

***Attorneys for Plaintiffs and Proposed Class***

22

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 20th day of January, 2023, a true and correct copy of the foregoing has been electronically filed with the Clerk of Court by using CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Jake Phillips*

Jacob L. Phillips (admitted *pro hac vice*)

Attorney for Plaintiffs

## SERVICE LIST

William M Harter (0072874)
**FROST BROWN TODD LLC**
10 West Broad Street, Suite 2300
Columbus, OH 43215
614-559-7226 / 614-464-1737 (fax)
wharter@fbtlaw.com

Daniel F. Diffley (admitted *pro hac vice*)
Katherine Gamsey (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
1201 W. Peachtree Street
Atlanta, Georgia 30309
404-881-7000 / 404-881-7777 (fax)
dan.diffley@alston.com
katie.gamsey@alston.com

***Attorneys for Defendants***